

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES R. KING, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.:  1:12-CV-1715-VEH** |
| | ) | |
| CVS CAREMARK | ) | |
| CORPORATION, a/k/a CVS | ) | |
| PHARMACY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION AND PROCEDURAL HISTORY

The trial of this case arising under the Age Discrimination in Employment Act ("ADEA") began on February 9, 2015, and the jury returned a verdict in favor of Plaintiff James A. King ("Mr. King") on February 19, 2015.[1] (Doc. 153); (*see also* Docs. 165-171 (7 volumes of trial transcript proceedings)). The jury awarded Mr. King $1,065,383.15 in compensatory damages (Doc. 153-1 at 1 ¶ 2) on his age discrimination claim against Defendant CVS Caremark Corporation ("CVS") and also

---

[1] Trial did not take place on Wednesday, February 11, 2015, due to the undersigned's illness or on Monday, February 16, 2015, as it was a federal holiday.

found that CVS had willfully violated the ADEA.[2] (Doc. 153-1 at 2 ¶ 3).

On June 3, 2015, the court entered a partial final judgment:

> Accordingly, the Defendants' motions for judgment as a matter of law remain **GRANTED** as to Plaintiff's defamation/libel/slander, invasion of privacy, interference with business relations, and negligence claims and all such claims remain **DISMISSED WITH PREJUDICE** as to both defendants. Defendant Cody Berguson remains terminated as a party defendant. Further, CVS's motions for judgment as a matter of law remain **DENIED** as to Plaintiff's age discrimination claims, including willfulness.

(Doc. 178 at 4).[3] On that same date, the court entered a separate final judgment order in the combined amount of $2,130,766.30 in favor of Mr. King based upon the jury's age discrimination and willfullness findings against CVS. (Doc. 180).

Defending itself during the course of the lengthy trial by only asking questions of witnesses called by Mr. King during his case-in-chief, CVS strategically chose not to put on its own separate case-in-chief in support of its various defensive positions why it was not liable to Mr. King for age discrimination, why it had not acted willfully under the ADEA and why, if liability was proven, Mr. King's damages were

---

[2] The court dismissed Co-Defendant Cody Berguson ("Mr. Berguson") before the jury entered into deliberations. (*See* CM/ECF margin entry dated Feb. 18, 2015, reflecting that "dft Cody Berguson dismissed from case").

[3] As the court noted while "[t]echnically two age discrimination claims remained under Count One of Mr. King's complaint–one asserted under the ADEA and one asserted under the Alabama Age Discrimination in Employment Act[,]" the court, with the parties' consent, "instruct[ed] the jury solely on one discriminatory discharge claim arising under the ADEA." (Doc. 178 at 3 n.4).

inflated. Now dissatisfied with the jury's credibility and factual determinations adverse to it and disappointed by the resulting sizeable verdict and judgment in favor of Mr. King, CVS seeks to hit the reset button in light of its failed litigation strategy. CVS attempts this through a collection of multifaceted motions claiming error on the part of the court, error on the part of the jury, and error on the part of opposing counsel. CVS's excessive efforts aimed at erasing a judgment which naturally flows from the jury simply disbelieving CVS's witnesses and not agreeing with its minimally presented defensive positions at trial are, for the most part, flawed and unavailing. The one exception is CVS's challenge to Mr. King's life insurance damages in the amount of $450,000, which the court concludes are excessive as a matter of law for the reasons explained herein.

Specifically pending before the court and under submission are CVS's: (i) Motion for Judgment as a Matter of Law (Doc. 197) (the "Renewed JMOL"); (ii) Motion for New Trial (Doc. 198) (the "New Trial Motion"); (iii) Motion for Suggestion of Remittitur in the Alternative to Motion for Judgment as a Matter of Law and Motion for New Trial (Doc. 199) (the "Remittitur Motion").[4] CVS filed these three motions on July 1, 2015, and the parties have since fully briefed them.

---

[4]  Mr. King also has filed several post-judgment motions. (Docs. 181, 182, 183, 184). Briefing on those motions was stayed (Doc. 190) on June 17, 2015, at the request of CVS.

(Docs. 203-208). After carefully considering all of CVS's contentions,[5] CVS's Renewed JMOL is **DENIED**. CVS's New Trial Motion and Remittitur Motions are **GRANTED IN PART** and otherwise **DENIED**.

## II.   RENEWED JMOL

### A.   Standards

Rule 50 provides in pertinent part:

**(a) Judgment as a Matter of Law.**

> **(1)** ***In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > **(A)** resolve the issue against the party; and
> >
> > **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2)** ***Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

---

[5] Due to the voluminous nature of CVS's post-judgment filings, the court does not attempt to address every purported point offered by CVS and instead has limited its written analysis to only those issues that either CVS has adequately developed or, alternatively, that cannot go unaddressed because CVS has omitted key pieces from or otherwise misconstrued or misrepresented the trial record.

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment–or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged–the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> **(1)** allow judgment on the verdict, if the jury returned a verdict;

> **(2)** order a new trial; or

> **(3)** direct the entry of judgment as a matter of law.

FED. R. CIV. P. 50(a)-(b).

Within the Eleventh Circuit, a renewed motion under Rule 50(b) <u>must</u> be based upon the same grounds as the original motion.

> The fact that Rule 50(b) uses the word "renew[ed]" makes clear that a Rule 50(b) motion should be decided in the same way it would have been decided prior to the jury's verdict, and that the jury's particular findings are not germane to the legal analysis. *See, e.g.,* [*Doe v.*] *Celebrity Cruises, Inc.*, 394 F.3d [891,] 903 [(11th Cir. 2004)]("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury."); *Caban-Wheeler v. Elsea*, 71 F.3d 837, 842 (11th Cir. 1996) (stating that a Rule 50(b) motion "may be used to renew consideration of issues initially raised in a pre-verdict motion [under Rule 50(a)]," <u>but that the court cannot consider matters not raised</u>

in the initial motion). The jury's findings should be excluded from the
decision-making calculus on a Rule 50(b) motion, other than to ask
whether there was sufficient evidence, as a legal matter, from which a
reasonable jury could find for the party who prevailed at trial.

*Chaney v. City of Orlando*, 483 F.3d 1221, 1228 (11th Cir. 2007) (emphasis added).

The Eleventh Circuit has described the application of the Rule 50 standard as

follows:

This Court reviews a Rule 50 motion *de novo*, applying the same
standard as the district court. *Telecomm. Technical Servs. Inc. v. Rolm
Co.*, 388 F.3d 820, 830 (11th Cir. 2004). The motion should be denied
only if reasonable and fair-minded persons exercising impartial
judgment might reach different conclusions. *Abel v. Dubberly*, 210 F.3d
1334, 1337 (11th Cir. 2000) (per curiam). We consider the evidence in
the light most favorable to the non-moving party, *id.*, but we review all
evidence in the record and "draw all reasonable inferences in favor of
the nonmoving party [without] mak[ing] credibility determinations or
weigh[ing] the evidence," *Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000).
"Credibility determinations, the weighing of the evidence, and the
drawing of legitimate inferences from the facts are jury functions, not
those of a judge." *Id.* (internal quotation marks omitted). When
reviewing the record, we "must disregard all evidence favorable to the
moving party that the jury is not required to believe." *Id.* at 151.
Therefore, we "should give credence to the evidence favoring the
nonmovant as well as that evidence supporting the moving party that is
uncontradicted and unimpeached, at least to the extent that that evidence
comes from disinterested witnesses." *Id.* (internal quotation marks
omitted). However, "the nonmoving party must provide more than a
scintilla of evidence that there is a substantial conflict in evidence to
support a jury question." *Berman v. Orkin Exterminating Co.*, 160 F.3d
697, 701 (11th Cir. 1998) (internal quotation marks omitted).

*Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1210-11 (11th Cir. 2010).

6

### B.    Ruling

This court has previously denied CVS's first Rule 50 motion with respect to the evidentiary sufficiency of Mr. King's age discrimination claim. (Doc. 171 at 56);[6] (*see also* Doc. 178 at 3-4). Nothing in CVS's Renewed JMOL compels the court to reconsider the merits of its prior rulings on age discrimination. Instead, and consistent with the court's reasoning on summary judgment entered on March 5, 2014, in which Defendants[7] were represented by different counsel,[8] the court remains persuaded that "there was sufficient evidence, as a legal matter, from which a reasonable jury could find for [Mr. King on his age claim]." *Chaney*, 483 F.3d at 1228.

If, at trial, the court had precluded the jury from hearing a portion of the evidence which the court found to be pivotally favorable to Mr. King on summary judgment, then CVS's initial JMOL and Renewed JMOL might make some procedural sense. However, the jury heard all the evidence that the court found to be essential when denying summary judgment on Mr. King's age discrimination claim. Consequently, the court sees no plausible basis for the type of relief sought by CVS

---

[6] All page references to Doc. 171 correspond with the court's CM/ECF numbering system.

[7] When the court uses "Defendants" in this opinion, it is referring to filings, orders, or other court events in which Mr. Berguson was still a co-defendant with CVS.

[8] The attorneys who appeared for Defendants at the final pretrial conference were different than the ones who actually tried the case. On December 19, 2014, the court permitted the substitution of Defendants' counsel for trial. (Doc. 93).

7

in its Renewed JMOL, especially when the Rule 56 and JMOL claim sufficiency standards are essentially the same and, as it pertains to Mr. King's age claim, CVS has not pointed to anything that is different between the Rule 56 versus the Rule 50 record that calls the court's summary judgment analysis into question. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000) ("[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 251, 106 S. Ct. 2505, 2511, 2512, 91 L. Ed. 2d 202 (1986))); *see also Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512 (characterizing triable test under both Rules as "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

Indeed, as the Eleventh Circuit has instructed lower courts, "once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its action. At that point, judgment as a matter of law is unavailable." *Combs*, 106 F.3d at 1538 (emphasis added). CVS's Renewed JMOL mentions *Combs*

8

in a footnote,[9] but makes no effort to factually compare it with this case, or to discuss why this court erred under *Combs* in finding that a triable dispute on the issue of intentional age discrimination existed.[10]

Also, while roughly two weeks prior to trial, Defendants (through their new counsel) did ask the court to reconsider its summary judgment ruling with respect to the triable scope of some of Mr. King's state law claims, <u>Defendants noticeably did not include within that motion a challenge of the triable nature of Mr. King's age discrimination claim</u>. (*See generally* Docs. 118, 141). Such an omission certainly does not preclude CVS from seeking post-judgment relief under Rule 50. However, the failure to ask for such relief seems to substantiate a tacit recognition on the part of CVS that, given the status of the record post-summary judgment, Mr. King's age discrimination claim was due to be decided by the jury and not the court.

As for CVS's Rule 50 challenge of the jury's willfulness finding, the Eleventh Circuit, in upholding a determination of non-willfulness, has explained:

> Under the ADEA, an employee is entitled to liquidated damages only for a willful violation of the statute. <u>Willfulness exists when the employer knew its conduct was prohibited or showed reckless disregard</u>

---

[9]  (Doc. 197 at 23 n.23).

[10]  For example as discussed *infra* at § III.B.1, here the record reveals an age-related bias on the part of Mr. Berguson, who the jury found to be a key player in the decision to fire Mr. King. In contrast, the  record analyzed in *Combs* reveals no proof that any relevant decisionmaker harbored a discriminatory animus.

for whether its conduct was prohibited by the ADEA. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985). Generally, willfulness is a question of fact for the jury, and the jury's finding on that issue is not to be readily disturbed. *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1561 (11th Cir. 1988).

Day maintains that the evidence shows that Liberty pursued discriminatory policies based on age. The evidence in the record before us leaves room for reasonable minds to differ and does not appear to establish that point conclusively. The jury heard that evidence and reached the contrary determination. The district court did not err in refusing to overturn that finding and award Day liquidated damages.

*Day v. Liberty Nat. Life Ins. Co.*, 122 F.3d 1012, 1016 (11th Cir. 1997) (emphasis added).

Here, the jury found that, in firing Mr. King, CVS willfully violated the ADEA. This means that the jury believed that CVS, through Mr. Berguson, "[either] knew its conduct was prohibited or showed reckless disregard for whether its conduct was prohibited by the ADEA." *Day*, 122 F.3d at 1016. CVS's Renewed JMOL hinges upon the jury believing that Mr. Berguson played only a little or no role in the decision to fire Mr. Berguson. CVS offers no binding cases which show how taking away the jury's willfulness finding under the circumstances of this case would not be an abuse of discretion.

All of the authorities cited by CVS in support of setting aside the jury's willfulness finding arise outside of the Eleventh Circuit. Additionally, the records in

these decisions are factually distinguishable–none of them include evidence of a supervisor/decisionmaker's use of ageist comments aimed at the plaintiff as well as co-employees. *See, e.g., Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950, 958 (5th Cir. 1993) (finding that employer's consulting with a lawyer, supervisor's "making notes of problems" with plaintiff "only after he had decided to replace [plaintiff]," employer's complaining about "matters . . . beyond [plaintiff's] job purview" and employer's failure to provide "better-trained clerical help" did not sufficiently establish a willful violation of the ADEA); *Carberry v. Monarch Marking Systems, Inc.*, 30 F. App'x 389, 395 (6th Cir. 2002) ("The only documents Carberry offered the district court to support his claim of willfulness were the newspaper advertisement, which identifies Monarch as an 'Equal Opportunity Employer,' and Driscoll's employment application, which refers to Monarch's policy of not discriminating on the basis of race, sex, or any other criterion prohibited by state or federal law.").

Even if this court were persuaded to follow the decisions cited by CVS, noticeably absent from CVS's briefs are any cases which confirm that sufficient proof of willfulness on the part of an immediate supervisor who the jury believed played a significant role in discharging an employee is somehow neutralized by the involvement of other decisionmakers' participation in the dismissal process.

11

Certainly, CVS has not cited to any binding Eleventh Circuit or Supreme Court case that has disturbed a jury verdict on willfulness because of such reasoning.

Additionally, CVS could have more strenuously contested willfulness at trial (for example by putting on evidence of training that Mr. Berguson and other supervisors received about avoiding age discrimination in the workplace), but instead strategically decided not to present its own case-in-chief after Mr. King had rested his case. While CVS disagrees with the jury's assessment of the evidence, the court will follow binding Eleventh Circuit precedent[11] and, accordingly, will not undo the jury's determination on willfulness in the absence of a more firm foundation for doing so.

Finally, to the extent that CVS has attempted to insert new grounds into its Renewed JMOL, not previously asserted or otherwise developed pre-verdict, such arguments are beyond the procedural reach of Rule 50(b). *Chaney*, 483 F.3d at 1228. Accordingly, for all these reasons, CVS's Renewed JMOL is **DENIED**.

## III.   NEW TRIAL MOTION

### A.   Standards

Following a jury trial, the district court "may, on motion, grant a new trial on all or some of the issues–and to any party– . . . for any reason for which a new trial

---

[11] *See Day*, 122 F.3d at 1016 (characterizing a jury's willfulness finding as one which "is not to be readily disturbed").

has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a)(1)(A). Such grounds include "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving," as well as "substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 194, 85 L. Ed. 147 (1940); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 452 n.9, 120 S. Ct. 1011, 1020 n.9, 145 L. Ed. 2d 958 (2000) (quoting *Duncan* with respect to grounds generally supporting relief in the form of a new trial).

"A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence.'" *Lipphardt*, 267 F.3d at 1186 (quoting *Hewitt*, 732 F.2d at 1556).

Concerning appellate review, "[b]ecause motions for a new trial are committed to the discretion of the trial court, [the Eleventh Circuit] review[s] the district court's

13

rejection of the defendants' argument only to ascertain whether there has been a clear abuse of discretion." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999) (citing *Agro Air Assocs., Inc. v. Houston Cas. Co.*, 128 F.3d 1452, 1455 n.5 (11th Cir. 1997)).

> The application of <u>an abuse-of-discretion review recognizes the range of possible conclusions</u> the trial judge may reach.
>
>> By definition ... under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call. That is how an abuse of discretion standard differs from a *de novo* standard of review. As we have stated previously, the abuse of discretion standard allows "a range of choice for the district court, so long as that choice does not constitute a clear error of judgment."
>
> *Rasbury v. I.R.S.* (*In re Rasbury*), 24 F.3d 159, 168 (11th Cir. 1994) (quoting *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989) (citing *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984))); *see also Kern*, 738 F.2d at 971 ("The very concept of discretion presupposes a zone of choice within which the trial courts may go either way."). Thus, when employing an abuse-of-discretion standard, <u>we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard</u>. *Maiz*, 253 F.3d at 662.

*United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (emphasis added).

Finally, the Eleventh Circuit "ha[s] found that '[t]his level of deference [afforded to district courts] is especially appropriate where a new trial is denied and the jury's determinations are left undisturbed.'" *Noga*, 168 F.3d at 1282 (quoting

*Insurance Co. of N. Am. v. Valente*, 933 F.2d 921, 925 (11th Cir. 1991)); *see also Valente*, 933 F.2d at 923 ("This standard acknowledges the deference that is due the district court's 'first-hand experience of the witnesses, their demeanor, and [the] context of the trial.'" (quoting *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987))).

### B.     Analysis

CVS has offered the following six grounds in support of its New Trial Motion: (1) the jury's verdict is contrary to the great weight of the evidence (including four subparts); (2) erroneous evidentiary rulings necessitate a new trial (including eleven subparts, which in turn refer to more than one piece of evidence); (3) the court's jury instructions were in error; (4) Mr. King's counsel improperly prejudiced and confused the jury in her closing argument; (5) the court should grant a new trial under the "cumulative error" doctrine; and (6) the court should grant a new trial because the damages award is excessive. (Doc. 198 at 2-3).[12] The court addresses CVS's contentions below.

### 1.     The Jury's Verdict

CVS first contends that it is entitled to a new trial because the jury's verdict is against the great weight of the evidence. This section of CVS's New Trial Motion is

---

[12]  All page references to Doc. 198 correspond with the court's CM/ECF numbering system.

loosely divided into four subparts:  (i) Mr. King has no evidence of pretext about CVS's reasons for firing him (Doc. 198 at 7); (ii) Mr. King's "actions supported a severe response from CVS–including termination" (*id.* at 8); (iii) Mr. King "has not offered substantial evidence that he would not have been terminated had he been younger" (*id.* at 9); and (iv) Mr. King "put forth no evidence that he was replaced by a person outside the protected class–a person under the age of forty." (*Id.* at 12).

The court has studied these attempted points made by CVS in this section and finds them either to be legally flawed under controlling authority or unpersuasive. For example, citing to *Washington v. United Parcel Serv., Inc.*, 567 F. App'x 749, 752 (11th Cir. 2014), an unpublished and, therefore, non-binding Eleventh Circuit decision, CVS claims that the court should grant its New Trial Motion because Dirk Lucas ("Mr. Lucas") was in his mid-to-late-forties when he replaced Mr. King. (Doc. 198 at 12).

This argument ignores the United States Supreme Court's on-point and binding opinion in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S. Ct. 1307 (1996), which describes the comparator *prima facie* element as one involving a "substantially younger" person as opposed to a replacement whose age falls outside of the ADEA's zone of protection. In *O'Connor*, the Fourth Circuit had granted summary judgment because the "petitioner's replacement was 40 years old" and "the

16

question presented for . . . determination is what elements must be shown in an ADEA case to establish the *prima facie* case that triggers the employer's burden of production." 517 U.S. at 310,  311, 116 S. Ct. at 1309, 1310.

In reversing the Fourth Circuit, the Supreme Court squarely held in *O'Connor* that "[b]ecause it lacks probative value, <u>the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the</u> *<u>McDonnell Douglas prima facie</u> <u>case</u>.*" 517 U.S. at 312, 116 S. Ct. at 1310 (emphasis added). Instead, the Court determined that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is <u>substantially younger</u> than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." 517 U.S. at 313, 116 S. Ct. at 1310 (emphasis added).

The Eleventh Circuit has since incorporated this *O'Connor* rule into its recitation of the *prima facie* formula for age discrimination when evidence of an over forty, but nevertheless substantially younger, replacement is at issue. *See, e.g., Benson v. Tocco*, *Inc.*, 113 F.3d 1203, 1208 (11th Cir. 1997) ("(4) was replaced by a younger individual" (citing *O'Connor*)); *Bogle v. Orange County Bd. of County Com'rs*, 162 F.3d 653, 657 (11th Cir. 1998) ("(3) that a substantially younger person filled the position ... from which he was discharged"); *Chapman v. AI Transport*, 229

F.3d 1012, 1024 (11th Cir. 2000) (en banc) ("(4) was replaced by or otherwise lost

a position to a younger individual"). Therefore, given the significant age differential

of approximately 20 years between Mr. Lucas and Mr. King,[13] Mr. King has

established a *prima facie* case of age discrimination through his replacement by Mr.

Lucas under *O'Connor*.

CVS's position also ignores the Eleventh Circuit's recognition that more than

one *prima facie* formulation is appropriate under the ADEA. For example, *Alphin v.

Sears, Roebuck & Co.*, 940 F.2d 1497 (11th Cir. 1991), provides another acceptable

structure of a *prima facie* case under the ADEA:

> In cases such as this based on circumstantial evidence, courts
> generally employ a variant of a *McDonnell Douglas* analysis. *See
> McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36
> L. Ed. 2d 668 (1973). A plaintiff can establish a *prima facie* case by
> showing (1) that he was in a protected age group and was adversely
> affected by an employment decision, (2) that he was qualified for his
> current position or to assume another position at the time of discharge
> or demotion, and (3) <u>evidence by which a fact finder might reasonably
> conclude that the employer intended to discriminate on the basis of age
> in reaching the decision at issue</u>. *See Earley*, 907 F.2d at 1082. Our
> focus here concerns the latter two elements of this quasi-*McDonnell
> Douglas* test.

*Alphin*, 940 F.2d at 1501 (emphasis added); *see also Jameson v. Arrow Co.*, 75 F.3d

1528, 1531 (11th Cir. 1996) ("This court generally has eschewed an overly strict

---

[13] Mr. King was 65 at the time of his discharge. (Doc. 166 at 6). *See* n.22, *infra*, for citation
information applicable to Doc. 166.

formulation of the elements of a *prima facie* case, particularly in age discrimination cases." (citing *Alphin*)).

Thus, an ADEA plaintiff can alternatively establish his *prima facie* case through other proof, such as age-biased remarks made by a decisionmaker and "me-too" evidence. Both of those categories of "other proof" exist in this trial record. *Cf. Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[T]he plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case."); *id.* ("A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011))).

An even more fundamental problem exists with this particular portion of CVS's New Trial Motion. Given the court's multiple Rule 50 rulings affirming the evidentiary sufficiency of Mr. King's age discrimination claim as a jury issue, it would certainly be odd, if not an abuse of discretion, *i.e.*, a clear error in judgment, for this court to then flip-flop post-judgment and conclude that the jury's verdict is unsustainable as being contrary to the great weight of the evidence, and grant CVS a new trial even though CVS elected not to put on its own evidence at trial.

The court rejects CVS's other points as unpersuasive for several reasons. While CVS challenges the jury's findings, it does so only by completely crediting evidence that is favorable to it while simultaneously fully discounting the weight of Mr. King's evidence. Importantly, CVS ignores the numerous credibility-driven factual determinations facing the jury and, regardless, has not convinced this court that the jury's findings are against the great weight of the evidence.

As mentioned during the introduction, *supra* at § I, after the close of Mr. King's case-in-chief, CVS strategically decided not to put on its own defense, apparently believing that it was unnecessary to emphasize to the jury those very points that it now presents to this court post-judgment about the termination-worthy nature of Mr. King's actions and, in its view, his limited proof of pretext. However, a new trial motion is not a procedural tool for a litigant to use after it concludes, in hindsight, that its trial strategy went awry.

By way of example only, a material factual dispute existed, which the jury had to resolve, over the scope of Mr. Berguson's role with respect to the final decision to discharge Mr. King. Val Giunta ("Ms. Giunta"), CVS's Director of Human Resources for the region in which Mr. King was working, is the person who, Mr. Berguson testified, told him to fire Mr. King on a conference call. (Doc. 169 at 148; Doc. 170

at 86).[14] However, CVS never called Ms. Giunta to the stand in its defense.[15] CVS also did not offer any documentation that confirmed Ms. Giunta's final decisionmaking authority.[16]

Mr. Berguson was employed by CVS at the time of trial, a factor that could be considered by the jury in assessing possible bias on his part. Further discrepancies in Mr. Berguson's testimony provide sufficient evidence for a reasonable jury to conclude that Mr. Berguson was not a credible witness. Particularly, Mr. King's testimony often directly contradicted Mr. Berguson's testimony, and the jury had to decide who to believe (in whole, in part, or not at all). Discrepancies even existed within Mr. Berguson's testimony regarding his role as a decisionmaker. (*Compare* Doc. 169 at 148 ("I [*i.e.*, Mr. Berguson] didn't provide [Ms. Giunta] with <u>any</u> information [about Mr. King]") (emphasis added), *with* Doc. 170 at 85 ("My only participation was [on the conference call with Ms. Giunta], <u>I agreed what Jim King did was very bad, that several policy violations were broken and that he admitted to</u>

---

[14]   All page references to Doc. 169 and Doc. 170 correspond with the court's CM/ECF numbering system.

[15]   CVS also did not request the court to consider any jury instructions or special interrogatories relating to Mr. Berguson's role in the decision to fire Mr. King and/or who, at CVS, was responsible for firing Mr. King.

[16]   Mr. King's termination form (Mr. King's Exhibit 49) submitted by Mr. Berguson on October 11, 2011, with an effective date of September 20, 2011, makes no reference to Ms. Giunta or otherwise indicates that the decision to discharge Mr. King was made by anyone other than Mr. Berguson.

those. Then I was told that he – to terminate him.") (emphasis added)). Under such circumstances, the jury's verdict reflects a reasonable belief that Mr. Berguson was a pivotal player in the discharge decision. This court cannot find that belief to be against the great weight of evidence.

Consequently, CVS's attack on the jury's verdict finding of pretext ignores multiple pieces of circumstantial evidence that the jury heard,[17] including Mr. Berguson's age-related bias and the role he played in the decision to fire Mr. King. *See, e.g., Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005) (citing *Ross v. Rhodes Furniture*, 146 F.3d 1286, 1291 (11th Cir. 1998) ("Even whe[n] such evidence of [age] bias proves insufficient to prove an employee's case through direct evidence, it can be relevant in the circumstantial framework to show that the employer's proffered reasons were pretextual.") (emphasis added). It similarly discounts the "me-too" evidence–Mr. Berguson's ageist comments made to Roger Harris ("Mr. Harris"), another pharmacist who was under Mr. Berguson's direct supervision–that supports the jury's finding of pretext. *See, e.g., Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1286 (11th Cir. 2008) ("The 'me too'

---

[17] The Eleventh Circuit has described pretext as "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538.

22

evidence was admissible, under Rule 404(b), to prove the intent of Bagby Elevator to discriminate and retaliate.").

CVS's contentions about the verdict also ignore the key credibility determinations which are the jury's province. As the court instructed the jury in part regarding the parameters of Mr. King's age claim:

> An employer may not discriminate against an employee because of age, but an employer may terminate an employee for any other reason, good or bad, fair or unfair. If you believe CVS's reasons for its decision to terminate Mr. King, and you find that CVS's decision was not because of Mr. King's age, you must not second guess that decision, and you must not substitute your own judgment for CVS's judgment — even if you do not agree with it. As I have explained, Mr. King has the burden to prove that CVS's decision to terminate him was because of his age. I have explained to you that evidence can be direct or circumstantial.
>
> To decide whether CVS's decision to terminate Mr. King was because of his age, you may consider the circumstances of CVS's decision. For example, you may consider whether you believe the reasons CVS gave for the decision. If you do not believe the reasons it gave for the decision, you may consider whether the reasons were so unbelievable that they were a cover-up to hide the true discriminatory reason for the decision.

(Doc. 150 at 8 (emphasis added)). Simply put, just because CVS employees testified at trial that Mr. King was fired "because of his admitted violations of CVS policies and Alabama Pharmacy Board regulations, and state and federal regulations that control pharmacists' conduct in dispensing controlled substances,"[18] the jury was

---

[18]  (*See* Doc. 150 at 7 (as appearing in the court's jury instructions)).

under no obligation to believe any of CVS's witnesses who testified about this explanation or, stated differently, that the explanation really mattered to those witnesses and, thus, to CVS.

CVS's New Trial Motion also seemingly misconstrues *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), to mean that an ADEA plaintiff can never prevail in a circumstantial evidence case of age discrimination whenever an employer offers a non-discriminatory explanation for its adverse employment action. As CVS urges, the jury verdict on age discrimination cannot stand because Mr. King's improper handling of Lortab/hydrocodone means that he failed to show age was the but-for reason for his termination. Implicit in this untenable argument is that the jury has no choice but to accept CVS's witnesses' non-discriminatory explanation of CVS's reason for its treatment of Mr. King *ipse dixit*. As discussed in more detail below, CVS's reliance upon *Gross* to challenge the jury's verdict in this manner is a misplaced overreach.

*Gross* involved a dispute over how to properly instruct a jury under the ADEA. In *Gross*, the Supreme Court framed the issue before the Court as follows:

> The parties have asked us to decide whether a plaintiff must "present direct evidence of discrimination in order to obtain a mixed-motive instruction in a non-Title VII discrimination case." Pet. for Cert. i. Before reaching this question, however, we must first determine whether the burden of persuasion ever shifts to the party

defending an alleged mixed-motives discrimination claim brought under the ADEA. We hold that it does not.

577 U.S. at 173, 129 S. Ct. at 2348 (footnote omitted).

The Court then proceeded to explain the material differences between Title VII and the ADEA and ultimately concluded that, under the ADEA, a plaintiff, regardless of the type of discriminatory evidence adduced (*i.e.*, direct versus circumstantial), can never have a mixed-motives case[19] and, consequently, can never shift the burden of persuasion to a defendant. *See Gross*, 557 U.S. at 175, 129 S. Ct. at 2350 ("Our inquiry therefore must focus on the text of the ADEA to decide whether it authorizes

---

[19] As established under the plurality decision of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), *superseded by statute as stated in Lewis v. Young Men's Christian Ass'n*, 208 F.3d 1303, 1304-05 (11th Cir. 2000), a mixed-motives case occurs "when an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations . . . ." *Gross*, 557 U.S. at 171, 129 S. Ct. at 2347. This type of case requires the plaintiff to show direct (or nearly direct) evidence of discrimination, 490 U.S. at 276, 109 S. Ct. at 1804 (opinion of O'Connor, J.), in order to trigger a burden-shifting to the defendant:

> [O]nce a "plaintiff in a Title VII case proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account."

*Gross*, 557 U.S. at 173-74, 129 S. Ct. at 2349 (quoting *Price Waterhouse*, 490 U.S. at 258, 109 S. Ct. at 1795). After the *Price Waterhouse* decision, Congress amended Title VII in mixed-motives cases such that a defendant can no longer avoid liability altogether through affirmative proof, but can limit the scope of plaintiff's available remedies. *See* 42 U.S.C. § 2000e-5(g)(2)(B) ("On a claim in which an individual proves a violation under section 2000e-2(m) of this title [*i.e.*, a mixed-motives case] and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court– . . . (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).") (emphasis added).

a mixed-motives age discrimination claim. <u>It does not</u>.") (emphasis added); *id.* at 177, 129 S. Ct. at 2351 ("It follows, then, that under § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action.").

In further defining this but-for standard, the Supreme Court clarified that "<u>[t]here is no heightened evidentiary requirement for ADEA plaintiffs to satisfy their burden of persuasion that age was the 'but-for' cause of their employer's adverse action</u>, and we will imply none. *Gross*, 557 U.S. at 178 n.4, 129 S. Ct. at 2351 n.4 (citation omitted) (emphasis added).

Finally, as the Supreme Court concluded in its opinion:

> We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision. Accordingly, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

557 U.S. at 180, 129 S. Ct. at 2352.

CVS has not pointed to any binding authorities which embrace its apparent view that a post-*Gross* plaintiff has a higher hurdle to clear with respect to the but-for causation standard whenever the defendant has offered some proof that substantiates

its proffered legitimate reason for firing the plaintiff. Certainly, *Gross* never held this and, instead, expressly admonished that neither an explicit nor an implicit "heightened evidentiary requirement" exists for ADEA plaintiffs. *Gross*, 557 U.S. at 178 n.4, 129 S. Ct. at 2351 n.4.

Here, the court charged the jury on Mr. King's ADEA discrimination claim consistent with the Eleventh Circuit pattern jury instructions and *Gross*. (Doc. 150 at 6-8). Neither the instructions nor the verdict form included a mixed-motives or burden-shifting component,[20] and the jury found that Mr. King had carried his burden of proving that CVS terminated his employment because of his age.

As properly charged, the jury had the fact-finding right to determine that CVS's claimed explanation for Mr. King's dismissal–his admitted illegal activity involving a refill of a prescription for Lortab–was not believable and, instead, that it was a subterfuge or a coverup for the real, but-for reason–his age.[21] Indeed, the court fails

---

[20] Additionally, CM/ECF and the trial transcript reflect that no party objected to the wording of the court's instructions or verdict form after the final charge conference.

[21] Common sense and experience dictate that not all illegal acts committed by an employee occurring within the scope of his employment automatically result in an employer's decision to fire that employee. For example, a trucking company may retain a driver pulled over for the illegal activity of speeding, even to the point of being charged with reckless driving, especially when there is a competing and compelling business interest of making sure that a delivery gets to its destination by a hard deadline. Similarly, the jury could have believed that in force-dispensing the hydrocodone and giving it to a familiar store customer, Judge Robinson, who came to the store to pick up a prescription refill for his wife (*see* Doc. 166 at 86 (Mr. King's testifying that he knew Judge Robinson"in a store setting as a customer")), Mr. King (comparable to other pharmacists) may have acted illegally in how he handled the situation, <u>but at the same time have disbelieved CVS's</u>

to see how granting CVS a new trial on the basis that the jury's verdict is against the great weight of the evidence would not violate *Comb*'s command, discussed *supra* at § II.B, not to preempt the jury's role in deciding a case that, in this court's view, presents an issue of intentional age discrimination on which reasonable minds can differ. *Cf. Valente*, 933 F.2d at 923 ("[W]hen a new trial is sought on the basis that the verdict is against the weight of the evidence, <u>our review is particularly stringent to protect the litigant's right to a jury trial</u>." (emphasis added) (citing *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984))).

## 2.    The Court's Evidentiary Rulings

CVS's New Trial Motion criticizes a multitude of evidentiary rulings (eleven separate areas with many of those including additional subparts) as erroneous and contends that, because it was substantially prejudiced by them, the court should order a new trial. (Doc. 198 at 13-31). The reasoning behind the court's evidentiary decisions are amply supported by the transcript from the pretrial hearing held on February 5, 2015. (*See* CM/ECF minute entry dated Feb. 5, 2015 ("Minute Entry for proceedings held before Judge Virginia Emerson Hopkins: hearing on unresolved

---

argument that those actions were the reason why CVS fired Mr. King. (*Cf. id.* 85, 86 (Mr. King's explaining that because he "thought someone other than the judge or [his wife,]Mary[,] had gotten the medicine. . . . [and that] . . . it had got out of the pharmacy as an error on [CVS's] part, as a misfill[,]" he exercised his "professional discretion" in force-dispensing the hydrocodone and giving it to Judge Robinson)). *See* n.22, *infra*, for citation information applicable to Doc. 166.

objections held on 2/5/2015."); *see also* Doc. 192 ("Transcript of Proceedings held on 2/5/2015, before Judge Virginia Emerson Hopkins."). The court summarized these oral rulings in orders on motions in limine and unresolved objections (Docs. 140, 144) entered before the trial started. For the most part, CVS's New Trial Motion simply rehashes those evidentiary arguments which the court has, after a lengthy pretrial hearing, soundly rejected.

One notable exception involves CVS's objection to the admissibility of Mr. King's Exhibit 91, which CVS maintains was improperly sent back with the jury during deliberations. (Doc. 198 at 23-26). Exhibit 91 is a 3-page document entitled "JAMES KING DAMAGE COMPUTATIONS" and shows a total of $1,065,383.15–the same amount awarded to Mr. King by the jury. While CVS acknowledges that the court initially admitted this exhibit (Doc. 166 at 147),[22] citing to a later portion of the trial transcript (Doc. 170 at 119), CVS argues that the court changed its mind and then erroneously allowed the jury to consider the exhibit during deliberations. This is an unsupportable overreach by CVS and a mischaracterization of what actually occurred at trial.

The excerpt from the transcript relied upon by CVS does not expressly reference Exhibit 91 and, instead, only generally indicates the following:

---

[22]   All page references to Doc. 166 correspond with the court's CM/ECF numbering system.

THE COURT: What I'm thinking is, I went back and looked at the rule on summaries. I don't think any of the summaries that are in are appropriate, because it says in the rule when matters can't be admitted in court because they're too voluminous. And everything that was summarized came in . . . court. So I don't think it's -- they're appropriate.

So I let them in as summaries, and I think I'm going to take them back out and tell the jury they're out. But if either of you have a different basis for those coming in, then you need to tell me what it is before I take them out. And now you can have your lunch. I just wanted you to know that's what I'm thinking.

(Doc. 170 at 119). Immediately after expressing these thoughts about summary exhibits, the court recessed for lunch and, upon return from that break, nothing more was put on the trial transcript about this topic. *Id.* Further, nowhere else within the trial transcript or other record does the court expressly indicate that the previously admitted Exhibit 91 was, by virtue of the above statements, ever excluded by the court.

Additionally, CVS's representation that Mr. King's 3-page damages calculation is the type of exhibit about which the court had voiced concerns is simply wrong. Under the Federal Rules of Evidence ("F.R.E."), a "summary" exhibit is "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006. Mr. King's damages calculation was not based upon "voluminous" underlying documents

that were difficult to examine in court. It simply is not a F.R.E. 1006 summary exhibit.

Instead, the court's statements pertained specifically to CVS's summary Exhibit 125 and Mr. King's summary Exhibit 104, both of which the court initially admitted (*see* Doc. 167 at 212 ("[A]t this time, I'm going to admit both Plaintiff's Exhibit 104 and Defendants' Exhibit . . . 125[.]")),[23] and then, by oral order (Doc. 157 at 16, 35), modified that earlier ruling so that those exhibits would be demonstrative ones only. Thus, CVS has not and cannot reference a portion of the transcript which substantiates that the court's rethinking about summary exhibits was ever intended to cover Exhibit 91.

In any event, CVS's contentions about Exhibit 91 completely ignore the court's daily custom and practice of jointly meeting with a lawyer from each side to make sure that the court and counsel are all on the same page with respect to any exhibit rulings. The court also informally meets with the parties about the entire set of admissible exhibits before the case is submitted to the jury. If a disagreement arises as part of this informal process, then the admissibility of the exhibit is formally addressed on the record. As the trial transcript's silence confirms, CVS never objected to Exhibit 91's status as an admitted exhibit (when Mr. King initially

---

[23] All page references to Doc. 167 correspond with the court's CM/ECF numbering system.

introduced it at trial or when CVS now says it mistakenly thought the court had decided to exclude it, but it remained admitted) and, consequently, CVS has waived any claim of error tied to its admission.[24] *See Brookhaven Landscape & Grading Co. v. J. F. Barton Contracting Co.*, 676 F.2d 516, 523 (11th Cir.), *adhered to*, 681 F.2d 734 (11th Cir. 1982) ("While we seriously doubt the merit of this contention, we find it unnecessary to decide the issue because the defendants did not object to the exhibit on the basis of prejudice at the time it was offered."); *id.* ("Failure by defendants to object on the ground of prejudice or to request a limiting instruction to the jury constitutes a waiver of objection on that ground."); *see also* FED. R. CIV. P. 46 ("When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection.").

Alternatively, even if Exhibit 91 should have been removed as an admitted exhibit, the jury heard testimony directly from Mr. King about his damages as well as the closing statement from his lawyer which specifically referred to and requested

---

[24] CVS's pretrial objections to Exhibit 91 are similarly waived because, consistent with the hearing on the parties' unresolved objections (which took place before the trial began), the parties indicated that they would either attempt to reach an agreement about the admission of Exhibit 91 or bring up any remaining unresolved issues about the document for the court to decide, which reserved right CVS never exercised. Thus, the court was under the impression that any disagreements over the admissibility of Exhibit 91 had been resolved by the time Mr. King sought to first introduce it at trial.

that the jury award damages in the same amount as Exhibit 91. (Doc. 171 at 84). Consequently, the jury could have awarded in Mr. King's favor "to the penny" (Doc. 198 at 24) even without the admission of Exhibit 91.

Another critical problem with CVS's New Trial Motion is that CVS fails to establish how any of the evidentiary errors that it raises were of such a prejudicial degree that a new trial is warranted. Importantly, noticeably absent from CVS's New Trial Motion are any examples of on-point <u>post-judgment</u> authorities which substantiate that ordering a new trial is appropriate.

As the Eleventh Circuit has explained regarding a district court's evidentiary rulings:

> [T]his court will afford great deference to the decisions of the district court with regard to evidentiary matters. "We will only reverse a district court's ruling concerning the admissibility of evidence where 'the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party.'" *Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1206 (11th Cir. 1995), citing *Murphy v. City of Flagler Beach*, 761 F.2d 622, 626 (11th Cir. 1985); *see also Hessen v. Jaguar Cars*, 915 F.2d 641, 645 (11th Cir. 1990) (a district court's evidentiary ruling will not be disturbed absent a clear showing of an abuse of discretion).

*Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1395-96 (11th Cir. 1997).

Here, at best, CVS has cited to some cases which do not mesh with this court's evidentiary rulings. However, *Heath* makes it clear that CVS's hurdle to obtain a new

trial post-judgment is much more demanding. Given the underlying discretionary standard that bestows this court with a range of choices when resolving evidentiary disputes,[25] even "an army of district court cases"[26] that support CVS's evidentiary contentions does not mean that it is entitled to a new trial. Importantly, CVS's New Trial Motion lacks any authorities which show not only that this court <u>clearly</u> abused its discretion, but also that its erroneous evidentiary decisions affected CVS's "<u>substantial rights</u>" at trial. For this additional and independent reason, CVS is not entitled to a new trial.

### 3.   The Court's Jury Instructions

This section of CVS's New Trial Motion has two parts. First, CVS maintains that the court's inclusion of a willfulness jury instruction was in error because Mr. King presented no evidence that CVS willfully violated the ADEA. (Doc. 198 at 32-34). Second, CVS argues that the court should have instructed the jury that Exhibits 72 and 73 were accurate statements of the law governing the distribution of controlled substances by pharmacists. (Doc. 198 at 34-37). Absent from this section of CVS's New Trial Motion is what standards apply at the district court level when a party challenges jury instructions post-judgment.

---

[25] *See Frazier*, 387 F.3d at 1259, *supra*.

[26] *Dial v. Midland Funding, LLC*, No. 2:14-CV-663-WMA, 2015 WL 751690, at *4 (N.D. Ala. Feb. 23, 2015).

Concerning criticism of jury charges, the Eleventh Circuit has explained:

> A district court is permitted wide discretion in considering a motion for
> new trial based on an erroneous jury instruction, *id.* at 1504, and we will
> reverse only where the instructions gave the jury "'a misleading
> impression or inadequate understanding of the law and the issues to be
> resolved.'" *Stuckey v. Northern Propane Gas Co.*, 874 F.2d 1563, 1571
> (11th Cir. 1989) (quoting *Bass v. International Bhd. of Boilermakers*,
> 630 F.2d 1058, 1062 (5th Cir. 1980)). We will not reverse where a jury's
> "verdict is supported by sufficient evidence." *Gupta v. Florida Bd. of
> Regents*, 212 F.3d 571, 582 (11th Cir. 2000), *cert. denied*, 531 U.S.
> 1076, 121 S. Ct. 772, 148 L. Ed. 2d 671 (2001).

*Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1081 (11th Cir. 2003). Procedurally, "[a]

party who objects to an instruction or the failure to give an instruction must do so on

the record, stating distinctly the matter objected to and the grounds for the objection."

FED. R. CIV. P. 51(c)(1).

Generally speaking, a party must raise objections to the court's final charges

prior to the beginning of jury deliberations in order to preserve them. *Cf. Brookhaven*,

676 F.2d at 520  ("[A]lthough counsel for the appellants steadfastly maintained that

the defendants had objected to the jury instructions on quantum meruit, the record

reveals that the charging conference was not recorded and that the defendants did not

enter their objections on the record after the jury had been charged and before it had

retired."). With respect to willfulness, CVS made the following objection after the

court's final charge conference:

I just want to reassert our objection to the charge on willfulness based on -- and I understand the court has overruled our motion for judgment. But I do not believe there's any evidence that would suffice for willfulness.

(Doc. 171 at 58).

Concerning his and others' involvement in the decision to discharge Mr. King,

CVS's employee Mr. Berguson testified at trial:

Q.  Did you have to partner with anyone to terminate Mr. King?

A.  I was a witness in an investigation that Jeff Sandford took statements on.

Q.  Did you have any phone calls that you participated to terminate Mr. King?

A.  I was on a conference call, and Jeff Sandford led the conference call and talked about the investigation. My only participation was, I agreed what Jim King did was very bad, that several policy violations were broken and that he admitted to those. Then I was told that he -- to terminate him.

Q.  Who was on that call?

A.  Val Giunta, Jeff Sandford, myself and I believe Richard Howard.

Q.  And what was the day of that phone call?

A.  Date of that phone call was September 28th. . . . .

THE COURT:  Did someone tell you during that phone call that the decision had been made to terminate Mr. King?

THE WITNESS:  Yes, ma'am.

THE COURT:  Who told you that?

THE WITNESS:  Val Giunta.

(Doc. 170 at 85-86).

In its New Trial Motion, CVS downplays Mr. Berguson's role in the decisionmaking process by pointing to the involvement of other people on the telephone call and identifying Ms. Giunta as the final decisionmaker. (Doc. 198 at 33-34). CVS also asserts that Ms. Giunta made her decision "acting reasonably and in good faith . . . ." (Doc. 198 at 34). However,  CVS completely ignores the fact that a reasonable jury could have disbelieved that Mr. Berguson played only a minimal role in the decision to terminate Mr. King's employment, especially when Mr. Berguson was a key witness in Jeff Sandford's ("Mr. Sandford") investigation that led to Mr. King's discharge, Mr. Berguson also was the person who notified Mr. King on October 11, 2011,[27] about the decision to terminate his employment effective September 20, 2011, and CVS's purported "final" decisionmaker, Ms. Giunta, never testified at trial. Further, there was sufficient evidence from which a reasonable jury could conclude that Mr. Berguson harbored an age-related animus and that he acted in a willful disregard of Mr. King's rights when he participated in the investigation

---

[27] (Doc. 166 at 124); *see also* Mr. King's Exhibit 49 (Mr. King's termination form issued and created by Mr. Berguson on October 11, 2011).

and subsequent decision to fire him.

Finally, CVS has not cited to any on-point authority which establishes that giving a willfulness charge, under circumstances similar to these, constitutes error. For example, CVS cites to the non-ADEA and non-employment case of *Hull v. Merck & Co.*, 758 F.2d 1474, 1478 (11th Cir. 1985), for the proposition that the court does not err in refusing to give an instruction "as to whether benzene exposure caused [the plaintiff's] leukemia" when "no evidence to support submission of such an instruction" existed in the record. (Doc. 198 at 32). Similarly, in the non-ADEA and non-employment case of *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir. 1983), the Eleventh Circuit found that the district court erred by instructing the jury on an implied warranty of merchantability and on an implied warranty of fitness for a particular purpose because of "no evidence" to support them. (Doc. 198 at 32). Here, evidence of Mr. Berguson's age-related bias, his involvement as a key witness in CVS's investigation of Mr. King, and his participation in the telephone conference which resulted in the decision to discharge Mr. King is sufficient to have willfulness submitted to the jury.

CVS also claims that the court committed error by not instructing the jury "that Exhibits 72 and 73 were accurate statements of the law governing the distribution of controlled substances by pharmacists." (Doc. 198 at 34). CVS's Exhibit 72 is an

eleven-page excerpt from the "**RULES OF ALABAMA STATE BOARD OF PHARMACY**" that covers controlled substances. CVS's Exhibit 73 is a forty-five page excerpt from the same set of state pharmacy rules that covers the practice of pharmacy.

A compromise was reached before closing statements about how to handle CVS's request that the court take judicial notice of certain laws and regulations applicable to pharmacists when instructing the jury. (*See* Doc. 171 at 65  (CVS's counsel indicating that "Well, that's fine, as long as I can say, This is the law, meaning, you know–"); *id.* ("THE COURT: I'm not going to get on you for saying this is the law."); *id.* ("[CVS's counsel]:  Okay.")); (*see also* Doc. 150 at 6 ("Exhibits containing CVS policies and Alabama Board of Pharmacy and other regulations addressing the dispensing of controlled substances have been admitted and will be available to you during your deliberations.")). Thus, CVS's indication that "[t]he Court denied those requests" (Doc. 198 at 35), omits a critical component of the transcript, namely CVS's <u>approval</u> of the court's proposed compromise <u>before</u> any closing arguments were made or instructions were given.[28]

That aside, CVS maintains that, because of statements made by Mr. King's counsel during closing, the court should have modified its jury instructions to

---

[28]  The court instructed the jury after closing arguments.

"instruct the jury on the relevant law and . . . take judicial notice that Exhibits 72 and 73 were accurate statements of the law." (Doc. 198 at 36-37). More specifically, as the trial transcript reads:

> [CVS's counsel]: . . . What I was saying is because they said this, because she has said this -- chosen to say this in closing, this opens back up the judicial notice. And, you know, I feel that if you're going to put that back into the charge, that I should know that so that I'm able to say, The judge is going to tell you that these things under the law are violations of the law.

(Doc. 171 at 88 (emphasis added)). After hearing from Mr. King's counsel, the court declined CVS's renewed judicial notice request:

> I don't think that sticking in 40 pages of whatever [i.e., CVS's proposed judicial notice charge] makes any sense, especially after the plaintiff has argued she did – I do believe you said he hasn't broken the law. She did criticize you for not having any witnesses from the police and not having any witnesses from the Board of Pharmacy. You're just going to have to go with the evidence you do have.

> I don't think it's appropriate for me to say more than what I've said I'm going to say, which is, Exhibits containing policies and regulations have been admitted and are available to you during your deliberations, and you can point them to them.

(Doc. 171 at 140-41). The court did, however, discuss possible alternatives to CVS's request with the parties (Doc. 171 at 91-94) and left that door open for further consideration after CVS's counsel made her closing statement for CVS (id. at 94), but no CVS lawyer asked for another side bar before the court instructed the jury.

Regarding the court's substantive decision not to take judicial notice of Exhibits 72 and 73 as part of the jury charges, the Eleventh Circuit "reviews the district court's refusal to give a defendant's requested jury instruction for abuse of discretion." *Maiz v. Virani*, 253 F.3d 641, 657 (11th Cir. 2001). Further, "a new trial is warranted only if the failure to give the instruction resulted in prejudicial harm to the requesting party." *Maiz*, 253 F.3d at 658 (citing *Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998)). Because CVS's Exhibits 72 and 73 were admitted into evidence (Doc. 157 at 10), were referred to generally by CVS's counsel during its closing statement (*see, e.g.*, Doc. 171 at 106 ("You must follow CVS policies, but more importantly, the board of regulation rules.")), and went back with the jury members during their deliberations, CVS has not shown how the omission of this information as part of a jury instruction resulted in prejudicial harm to it, *i.e.*, that a "rational jury" would have found in CVS's favor had the jury been instructed as requested. *Cf. Maiz*, 253 F.3d at 661 n.14 (indicating an "inclin[ation] to agree with Plaintiffs' arguments [about prejudice,]" but declining to reach that issue "as there was no error in the district court's refusal to instruct the jury in accordance with Defendants' wishes"); *Broaddus v. Florida Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998) ("[W]e find that the court's supplemental instruction, to which FPC objected, misstated the law according to *Hazen Paper*, and caused

41

prejudicial harm to FPC by allowing the jury to believe that it could consider the medical evidence as evidence of age discrimination under the ADEA."); *Broaddus*, 145 F.3d at 1288 (quoting *Mosher v. Speedstar Div. of AMCA Intern., Inc.*, 979 F.2d 823, 827 (11th Cir. 1992) (holding that "where the court's instructions caused a jury to consider erroneous 'criterion of liability[,]' plaintiff was prejudiced and new trial was warranted")).

### 4.    Mr. King's Closing Statement

CVS additionally asserts that its New Trial Motion should be granted because of several prejudicial and confusing statements made by Mr. King's counsel during closing. (Doc. 198 at 37-38). In arguing for a new trial in this section, CVS cites generally to *Christopher v. Florida*, 449 F.3d 1360 (11th Cir. 2006), as authority for the appropriate standard to use, but does not attempt to explain how to apply it in the context of this case. (Doc. 198 at 37).

In *Christopher*, the Eleventh Circuit applied a substantial justice standard and affirmed an order <u>granting</u> a new trial when no objection was made by opposing counsel at trial about improper/misleading statements made during the plaintiff's closing argument:

> Defense counsel did not object to this argument at trial. But "where the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised." *McWhorter*,

906 F.2d at 677; *See* FED. R. CIV. P. 61 (setting out substantial justice standard).

*Christopher*, 449 F.3d at 1366.

However, the Eleventh Circuit pointed out in *Christopher* that a different appellate standard of review applies when a party fails to object during closing argument and the district court has <u>denied</u> the motion for new trial:

> We stress that the case before us is not one in which we are asked to reverse a denial of a motion for new trial and in which the grounds for the new trial motion were not objected to during the underlying trial. *Compare Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) (appellate court applying plain error review to counsel's closing argument to determine if the district court erred in denying a motion for new trial where the motion was based on argument to which there was no objection during trial); *compare also Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993) (appellate court not reviewing denial of new trial by district court but reviewing the district court's judgment on the jury verdict and applying plain error review to determine whether district court's judgment must be vacated based on closing argument not objected to during trial); *Woods v. Burlington Northern R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *rev'd on other grounds*, 480 U.S. 1, 107 S. Ct. 967, 94 L. Ed. 2d 1 (1987) (same). Because granting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before him, <u>an appellate court may uphold a district court's discretionary grant of new trial without deciding whether the case contains the kind of prejudicial, plain error that would compel the appellate court to set aside a judgment on direct appeal if a motion for new trial had not been granted</u>.

*Christopher*, 449 F.3d 1366 n.4 (emphasis added).

Thus, consistent with *Christopher*, for those improper arguments made by Mr. King's counsel that CVS failed to challenge at trial, CVS's New Trial Motion is lacking because it has made no attempt to show how the plain error standard has been met or otherwise adequately developed why granting a new trial on these previously never-objected-to grounds satisfies the substantial justice standard. *See Woods v. Burlington N. R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *rev'd on other grounds*, 480 U.S. 1, 107 S. Ct. 967, 94 L. Ed. 2d 1 (1987) ("We retain the authority to review for plain error <u>but exercise of that authority is seldom justified in reviewing argument of counsel in a civil case</u>. We conclude it is not justified here.") (emphasis added).

CVS does point to two times that it specifically objected at trial, which warrant further discussion. The first objection relates to Mr. King's counsel's at least implicitly arguing that CVS retaliated against Mr. King even though that claim no longer was in the case. (Doc. 171 at 90).

For example, at one point during Mr. King's summation his counsel urged:

> And then the final knife that I consider willfulness is, even though they knew Jim had complained about discrimination and that Cody Berguson had used these words, thief, liar, lazy,why don't you retire, buy an annuity and go home, buy an annuity and retire, when are you going to retire, even though they knew that was Jim's claim, who do they send in to terminate him? They can't do it on the phone. He has to come into the office. And Mr. Berguson is given the opportunity to fire Jim King. At 65, being fired. At 65, being fired, trying to find a job now in a market with young people. They knew he wouldn't recover from that.

> There was no way. And even though he has been trying for four years,
> he's not been able to find a job.

(Doc. 171 at 81). As the court ruled on CVS objection at trial:  "I'm going to instruct

them that there's only one claim, so I don't think -- I think my final statement is going

to be fine." *Id.*

The timing of when the plaintiff made improper arguments to the jury in

*Christopher*, *i.e.*, before or after the court gave its instructions to the jury, is not

addressed in the opinion. However, a non-binding decision of the Eleventh Circuit

is helpful in considering this post-judgment issue, as this court is looking at the

totality of the circumstances under which the jury made its decision. In *Wilson v.

NHB Indus., Inc.*, 219 F. App'x 851 (11th Cir. 2007), the Eleventh Circuit directed

a new trial based on its finding that improper comments by plaintiff's counsel during

closing arguments that (1) misstated the law, (2) went directly to the very issues

contested in the case, (3) were made in the rebuttal phase of a closing argument such

that defendant had no opportunity to correct those statements, (4) were made after the

jury had already been instructed on the law by the court, and (5) were not cured by

a supplemental instruction before deliberations although such an instruction was

requested. *See id*. at 853-54 ("Given that the jury heard the parties' closing arguments

after they had already been instructed on the law, and where the improper comments

occurred during [Plaintiff's] counsel's rebuttal when [Defendant] had no further opportunity to speak to the jury, and where the comments constituted a misstatement of the law which went directly to the very issues contested in the case, the Court finds that counsel's improper comments, especially without a curative instruction, cast an impermissible taint over the jury's verdict."). In contradistinction, in this case, assuming that Plaintiff's counsel made improper comments during closing argument (1) that misstated the law, and (2) that misstatement did go to any issue in the case, here, the comments were made (3) in the first portion of Plaintiff's closing, so CVS had an opportunity to respond, (4) were made before the jury was instructed by the jury, and (5) the court accurately instructed the jury so as to clear up any confusion about what the only claims in the case were before the jury deliberated. Under the totality of these trial circumstances, the court concludes that: (i) it did not err; and (ii) if it did err, Mr. King's counsel's fleeting references to retaliation before the court charged the jury did not affect CVS's substantial rights at trial.

The second objection raised by CVS pertains to an improper Golden Rule argument. (Doc. 198 at 38 n.18; Doc. 171 at 81-82). However, as the court stopped Mr. King's counsel from proceeding down that path (*e.g.*, "Don't go into --") and CVS then immediately followed with its specific objection to Mr. King's counsel's closing, CVS cannot show how it was substantially harmed by this inchoate error.

46

Additionally, CVS has not cited to any comparable cases which show that failing to grant a new trial based upon these particular objections would be an abuse of discretion. Even CVS's sole cited authority, *Christopher*, a case involving excessive force and a plaintiff's closing statement found to be "in <u>direct</u> contravention of the [district] court's earlier qualified immunity order" 449 F.3d at 1366 (emphasis added), does not dictate that a district court <u>must</u> grant a new trial when improper argument occurs during a closing statement. Instead, *Christopher* underscores the district court's discretion to order a new trial when it finds "a fair trial" did not take place. *Id.* at 1368 (internal quotation marks omitted).

Here, the court concludes that neither separately nor collectively do these instances render the trial to have been fundamentally unfair for CVS. Any error that occurred during Mr. King's closing argument was harmless. *See* FED. R. CIV. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence–or any other error by the court or a party–is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."); *id.* ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

### 5.    The "Cumulative Error" Doctrine

CVS alternatively maintains that the court should grant its New Trial Motion

47

on the basis of the "cumulative error" doctrine. (Doc. 198 at 39-42). The only binding authority cited by CVS (Doc. 198 at 39) with respect to this ground is a decision granting a new trial in a federal firearms criminal case. *See United States v. Pearson*, 746 F.2d 787, 790 (11th Cir. 1984) ("In this appeal, John Petracelli asserts . . . that he was deprived of his right to a fair trial and to due process of law by the cumulative effect of errors committed by the trial court and prosecutorial misconduct at trial.") (emphasis added); *id.* at 796 ("Even if we were to find any of the above errors, standing alone, to be harmless, their cumulative effect, especially in light of the relative strength of Petracelli's possession defense, was clearly prejudicial and combined to deprive Petracelli of a fair trial.").

CVS also cites (Doc. 198 at 39 n.19) to several unpublished and therefore non-binding decisions in which the Eleventh Circuit assumed that, even if the doctrine appropriately applies in civil cases, the movant did not make the proper showing for the relief sought. *See, e.g., Esoteric, LLC v. One (1) 2000 Eighty-Five Foot Azimut Motor Yacht Named M/V Star One*, 478 F. App'x 639, 641 n.3 (11th Cir. 2012) ("Even if we assume–without deciding–that the cumulative error doctrine applies to civil proceedings, Estrella has failed to demonstrate that the district court erred in granting Esoteric's request for a salvage award."); *Johnson v. Guerrieri Mgmt., Inc.*, 437 F. App'x 853, 857 (11th Cir. 2011) ("Even assuming that those two rulings were

48

erroneous, they did not have any impact on the outcome of the case. Thus, Johnson has failed to establish cumulative error warranting a new trial.").

CVS points to the three questions asked during the course of the jury's deliberations as illustrative of why this court should extend the application of the cumulative error doctrine to civil cases such as this one (even though the stakes for the losing defendant are far less compelling (*i.e.*, the payment of monetary damages to the plaintiff versus the loss of personal liberty) and, unlike *Pearson*, prosecutorial misconduct is obviously not a factor) and grant CVS a new trial. Assuming, without deciding, that the Eleventh Circuit would agree with those sister circuits that have awarded a new trial on the basis of cumulative error occurring in a civil case,[29] CVS's logic for applying it to this action is puzzling to the court. Specifically, the court answered each one of these jury questions in a manner that was acceptable to both parties[30] and, to the extent that a juror or jurors were confused by virtue of the multiple errors that CVS contends occurred during the trial, these answers adequately addressed those unclear issues for the jury. Consequently, CVS has not shown how the cumulative effect of any errors was "clearly prejudicial and combined to deprive

---

[29] CVS acknowledges that a split among circuits exists about whether this doctrine is appropriately invoked in civil cases. (Doc. 198 at 39 n.19).

[30] CVS did not ask the court to declare a mistrial based upon these questions from the jury either.

[CVS] of a fair trial." *Pearson, supra*.

### 6.    The Damages Award As Excessive

The last section of CVS's New Trial Motion cites to *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1326 (11th Cir. 1999), and observes that a court may award a new trial when damages are excessive. (Doc. 198 at 42). CVS provides no analysis and merely "incorporates by reference all of its arguments in favor of remittitur (set forth in its Motion for Suggestion of Remittitur) as arguments in favor of new trial due to an excessive damages award."[31] (Doc. 198 at 42). Based upon the court's treatment of CVS's Remittitur Motion, as explained *infra* at § IV.B, this portion of CVS's New Trial Motion is, **GRANTED IN PART** on a limited and conditional basis and otherwise **DENIED**.

Accordingly, for all the above reasons, CVS's New Trial Motion is **GRANTED IN PART** and otherwise **DENIED**.

## IV.    REMITTITUR MOTION

### A.    Standards

A federal court has no general authority to reduce the amount of a jury's verdict. *Kennon v. Gilmer*, 131 U.S. 22, 29, 9 S. Ct. 696, 33 L.

---

[31]    "Incorporating by reference", particularly with no pinpoint citation, is an unclear, unhelpful, and ultimately unpersuasive way for a party to present an argument, as the court is left to guess which parts of that incorporated, twenty-three page motion plus three exhibits really matter to <u>this</u> motion.

Ed. 110 (1889). The Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of plaintiff's injury. *Id.* A federal court may not, therefore, "according to its own estimate of the amount of damages which the plaintiff ought to have recovered, ... enter an absolute judgment for any other sum than that assessed by the jury." *Id.* at 30, 9 S. Ct. 696. To do so would deprive the parties of their constitutional right to a jury. *Id.*

A district court may, however, order a new trial. The authority to do this is located in the common-law principle, later codified in the Judiciary Act of 1789, that "[t]rials by jury in civil causes could not subsist now without a power, somewhere, to grant new trial.... It is absolutely necessary to justice, that there should, upon many occasions, be opportunities of reconsidering the cause by a new trial." *Bright v. Eynon*, 1 Burr. 390, 393 (K.B. 1757) (Lord Mansfield) (quoted by Judge John J. Parker in *Aetna Cas. & Sur. Company v. Yeatts*, 122 F.2d 350, 353–54 (4th Cir. 1941)). Therefore, when a court finds that a jury's award of damages is excessive, it may grant the defendant a new trial. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996).

A federal court's power to "order" a remittitur grew out of this authority to grant a new trial. A court which believes the jury's verdict is excessive may order a new trial unless the plaintiff agrees to remit a portion of the jury's award. *Dimick v. Schiedt*, 293 U.S. 474, 486-87, 55 S. Ct. 296, 79 L. Ed. 603 (1935). This practice dates from Justice Story's opinion in *Blunt v. Little*, 3 F. Cas. 760, 761-62 (No. 1578) (C.C.D. Mass. 1822) (Story, J.), in which he announced that, because the verdict was not supported by the evidence, unless the plaintiff was willing to remit $500 of his damages, the cause would be submitted to another jury. Although Justice Story cited no authority whatever, the Supreme Court has "never expressed doubt with respect to this rule." *Dimick*, 293 U.S. at 486, 55 S. Ct. 296. *See e.g., Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 86 S. Ct. 657, 15 L. Ed. 2d 582 (1966); *Arkansas Valley Land & Cattle Co. v. Mann*, 130 U.S. 69, 9 S. Ct. 458, 32 L. Ed. 854 (1889); *Northern Pac. R. Co. v. Herbert*, 116 U.S. 642, 646-47, 6 S. Ct. 590, 29 L. Ed. 755 (1886).

>     The Seventh Amendment requires, however, that the plaintiff be
> given the option of a new trial in lieu of remitting a portion of the jury's
> award. *Hetzel v. Prince William County, Va.*, 523 U.S. 208, 118 S. Ct.
> 1210, 1211, 140 L. Ed. 2d 336 (1998). In *Hetzel*, the Supreme Court
> reversed the Fourth Circuit's mandamus to the district court to enter
> judgment for a remittitur without affording the plaintiff the option of
> electing a new trial. The Court expressly held that no judgment for a
> remittitur may be entered without the plaintiff's consent because the
> Seventh Amendment prohibits the court from substituting its judgment
> for that of the jury's regarding any issue of fact. *Id.* at 1212. *See also
> Dimick*, 293 U.S. at 474, 55 S. Ct. 296; *Gasperini*, 518 U.S. at 433, 116
> S. Ct. 2211. If the plaintiff does not consent to the remittitur, the court
> has no alternative but to order a new trial. *Id.*

*Johansen*, 170 F.3d at 1328-29 (footnotes omitted).

## B.   Analysis

In its Remittitur Motion (which CVS filed as an alternative to its Renewed

JMOL and New Trial Motion), CVS requests that the court's "denial of the Motion

for New Trial, if any, will be conditioned upon King's consent to a substantial

remittitur . . . ." (Doc. 199 at 22).[32] The two figures suggested by CVS as appropriate

remitted amounts for Mr. King to accept are $453,399 or $446,979, or a reduction of

$611,984.15, or $618,404.15, respectively from the $1,065,383.15 in compensatory

damages that the jury awarded to Mr. King. (*Id.* at 20).

CVS claims that the court should seek Mr. King's consent to a reduction of the

damages awarded to him by the jury because (i) his lost wages are not supported by

---

[32]  All page references to Doc. 199 correspond with the court's CM/ECF numbering system.

the evidence (Doc. 199 at 6-12); (ii) his recovery for insurance benefits should be limited to out-of-pocket expenses and actual replacement costs (*id.* at 12-16); (iii) his recovery for life insurance in the face amount of $450,000, should be remitted (*id.* at 16-17); (iv) his recovery for government mandated benefits should be deducted (*id.* at 17-19); and (v) his recovery for retirement benefits should be remitted. (*Id.* at 19-20).

The focus of CVS's Remittitur Motion is Mr. King's Exhibit 91 (Doc. 199 at 6). As explained earlier in this opinion, Mr. King's Exhibit 91 is a 3-page document entitled "JAMES KING DAMAGE COMPUTATIONS" and shows a total of $1,065,383.15–the identical figure that the jury awarded to Mr. King. CVS's Remittitur Motion secondarily involves Mr. King's Exhibits 1, 2, 4, 5, and 24, which all relate to his damages claim. (Doc. 199 at 4 n.2). As Mr. King points out in his response (Doc. 204 at 9-10),[33] CVS did not raise any pretrial objections to Mr. King's Exhibits 1 or 2 (Doc. 117 at 1-2), but did contest the admissibility of Exhibits 4, 5, 24,[34] and 91. (Doc. 117 at 2-3, 11, 91).

---

[33] All page references to Doc. 204 correspond with the court's CM/ECF numbering system.

[34] Mr. King's Exhibit 4 is a compilation (Bates stamp King v CVS 00153-00166) of CVS documents that details Mr. King's annual salary, merit increases, and other benefits. Exhibit 5 is a collection (King v CVS 00193-00318) of CVS "Workforce Job Summary" records for Mr. King. Mr. King's Exhibit 24 is a one-page part of Exhibit 5 (King v CVS 00197) and reflects Mr. King's compensation immediately prior to his termination date of September 20, 2011.

Case 1:12-cv-01715-KOB   Document 211   Filed 02/23/16   Page 54 of 63

The court addressed these pretrial objections in its memorandum opinion and order (Doc. 140) entered on February 8, 2015. Concerning Exhibits 4, 5, and 24, the court, at the pretrial hearing held on February 5, 2015, overruled CVS's unresolved objections asserted under F.R.E. 401, 402, and 403. (Doc. 140 at 34, 24). CVS's objections to Exhibit 91 for vagueness were reserved, and the court clearly stated "[n]o objection pending; therefore, no ruling." (*Id.* at 47).

Within its evidentiary order, the court made it clear to the parties that these pretrial rulings were subject to reconsideration:

> The following rulings are subject to revision during trial, including, for example, if a party "opens the door" to an area of evidence which the court prohibited on the motion of that particular party, or if a party believes that a prohibited matter is appropriate to use for impeachment purposes. However, the court cautions counsel to make sure, before covering any area of evidence prohibited by this order, that the court is in agreement that such introduction before the jury is or has become proper. Additionally, counsel are cautioned that they cannot allude to any excluded evidence and, when referring to any evidence which is stated in this order to be admissible for some purposes, but not for others, they may not argue such excluded purposes.

(Doc. 140 at 6 n.4 (emphasis added)).

At trial, CVS did not seek reconsideration from the court as to its treatment of Exhibit 91 or otherwise object to any of these damages exhibits when Mr. King sought to introduce them and, accordingly, they were all admitted and given to the jury during deliberations. (*See also* discussion of Exhibit 91, *supra* at § III.B.2). Thus,

unlike those cases relied upon by CVS such as *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1265-66 (11th Cir. 2008) ("Farm Stores' chief argument for a remittitur is that, even viewing the evidence in the light most favorable to the store managers, the damages the jury calculated are nearly twice the amount the evidence supports if the formula laid out in the damages instruction is applied."), *Holmes v. W. Palm Beach Hous. Auth.*, 309 F.3d 752, 754 (11th Cir. 2002) ("However, in neither the district court nor in this court did appellant point to any evidence that the lost back-pay/benefits over the period would be more than $3,300."), *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1283-84 (11th Cir. 2000) (adding up various pieces of evidence to total a maximum of $107,947.43 in damages versus the jury's award of $525,069.00), and the other non-binding decisions CVS cited, the jury had evidence <u>that was not objected to by CVS when it was admitted at trial</u> to support the damages amount awarded to Mr. King.

This omission on the part of CVS is critical because, in the absence of an objection, CVS has, ordinarily, not preserved the right to complain post-judgment that Mr. King did not separately prove, through his testimony, the legitimacy of each category of claimed damages. As stated in *Rodriguez*,

> As a general rule, "a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."

> *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir.
> 1985); *see also Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1284
> (11th Cir. 2000) ( "The rule in this circuit states that where a jury's
> determination of liability was not the product of undue passion or
> prejudice, we can order a remittitur to the maximum award the evidence
> can support.").
>
>          To determine whether the jury's award is within the range dictated
> by the evidence, we view the evidence in the light most favorable to the
> store managers and apply the district court's instructions, which were
> not objected to by either party.

*Rodriguez*, 518 F.3d at 1266.

Indeed, as indicated *supra* at n.24, CVS's complete silence during the
introduction of Exhibit 91 left the court with the impression that the parties had
reached an agreement about the scope of Mr. King's claimed damages. Regardless,
it was not up to the court to remind CVS that it had previously reserved objections to
Exhibit 91 and ask whether it needed to be heard before the exhibit was admitted into
evidence. *Cf. Woods*, 768 F.2d at 1292 ("Our general rule is that a timely objection
is necessary to bring to the trial court's attention alleged errors in the conduct of a
trial." (citing *Jenkins v. General Motors Corp.*, 446 F.2d 377, 382-83 (5th Cir.
1971))).[35] Further, CVS did not object to the court's damages instructions.

CVS nonetheless contends that a remittitur is still appropriate because Mr.

---

[35]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down
prior to October 1, 1981.

King's award includes items of damage that "are improper as a matter of law." (Doc.

208 at 2). Nowhere in its briefing has CVS pointed to a <u>binding</u> decision that clearly

precludes Mr. King from seeking these damages as part of his make-whole remedy

under the ADEA.[36] Indeed, within its reply brief CVS fully acknowledges the absence

of any controlling authority that supports its Remittitur Motion:

> King's statement that CVS did not cite any Eleventh Circuit cases relating to the proper measure of damages to be awarded for lost insurance benefits is incorrect. CVS cited to at least one case from this circuit. (*See* Doc. 199 at 10-11.) More importantly, however, King does not cite any Eleventh Circuit (or other circuit) cases that are contrary to those cited by CVS. <u>Merely because the Eleventh Circuit has not spoken to the issue does not mean the issue cannot be decided in CVS' favor. CVS' analysis of the recoverability of insurance (and other benefits) is well reasoned and, absent contrary precedent, the Court should adopt it.</u>"

(Doc. 208 at 6 n.3 (emphasis added)).

Having carefully studied and weighed the positions of both sides, the court is

persuaded that Mr. King should accept a remittitur of his damages with respect to one

category–Mr. King's recovery for life insurance benefits in the amount of $450,000.

(Mr. King's Exhibit 91 at 2). Mr. King's Exhibit 91 has separate line items for "**LIFE**

---

[36] CVS cites to *McKelvy v. Metal Container Corp.*, 674 F. Supp. 827, 832 (M.D. Fla. 1987), *aff'd in part*, *vacated in part*, 854 F.2d 448 (11th Cir. 1988), for the proposition that, in order to recover for insurance benefits, a plaintiff must show "he obtained alternate insurance coverage or that he suffered medical expenses that would have been covered under defendant's insurance plan." (Doc. 199 at 12-13). However, there is no indication that the Eleventh Circuit dealt with this issue on appeal.

INSURANCE" in the amount of $450,000 and "**REPLACEMENT INSURANCE**" in the amount of $12,573.88. *Id.*

Despite CVS's failure to object to Exhibit 91 at trial, the court agrees with CVS that allowing the jury's award of $450,000 in death benefit damages to stand would be fundamentally unfair and excessive under the ADEA's make-whole remedial purpose. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1338 (11th Cir. 1999) ("The central purpose of [the] statute[] is to 'make the plaintiff 'whole,' to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer.'" (quoting *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1561 (11th Cir. 1988))).

First, the damages appear to possibly be an improper double recovery (*i.e.*, premiums for cost of replacement insurance <u>plus</u> death benefits for lost group life insurance coverage)[37] for an event (*i.e.*, Mr. King's death) that <u>never occurred</u>.

---

[37] The court cannot tell from Exhibit 91 whether "**REPLACEMENT INSURANCE**" is for Mr. King's lost life insurance or medical coverage. Mr. King's testimony at trial does not clarify this issue either. The overall import of the parties' briefing, especially as CVS does not ever contend that Mr. King is seeking an improper double recovery with respect to life insurance, seems to suggest that this figure is for replacement health insurance. (*See, e.g.*, Doc. 199 at 17 ("The only 'proof' relating to life insurance is that CVS paid $60 per year for 'Basic Life/Accidental' insurance.");*id.* (indicating that Mr. King "is entitled, at most, to $300 for lost life insurance benefits" but not ever linking or comparing that suggested amount to Mr. King's claimed figure of $12,573.88 to premiums paid for replacement insurance); *id.* at 21 (detailing CVS's alternative remittitur damages calculation which includes $300 for life insurance premiums <u>and</u> $12,537.88 for replacement insurance)); (*see also* Doc. 204 at 18 ("CVS argues that King is not entitled to the face value of his life insurance benefits, reimbursement for his wife's surgery, <u>costs of replacement health insurance</u>, CVS's match of King's 401(k) contributions, or projected government mandated benefits.") (emphasis added)). Even if

Second, and regardless of any improper double recovery, such damages represent an unwarranted financial windfall for Mr. King because, if he had remained employed at CVS, <u>this death benefit is not something he would have ever received as a CVS employee because he did not die</u>.

Based upon the parties' briefing, the Eleventh Circuit has yet to speak directly to this issue. However, as the Fifth Circuit has explained (and which precedent this court is persuaded to follow), the scope of an employee's recovery for insurance benefits "is limited to recovery of those expenses actually incurred <u>by either replacement of the lost insurance or occurrence of the insured risk</u>." *Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006) (internal quotation marks omitted) (emphasis added) (quoting *Pearce v. Carrier Corp.*, 966 F.2d 958, 959 (5th Cir. 1992));[38] *cf. Kossman v. Calumet County*, 800 F.2d 697, 704 (7th Cir. 1986), *overruled on other grounds by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988) ("The court should include those expenditures in the backpay award that Jodar and Kossman incurred if in fact they did purchase alternative coverage or in lieu

---

Exhibit 91 does not include an impermissible double recovery for life insurance, the $450,000 in damages for life insurance are excessive because they put Mr. King in a better position than he would have been if CVS had never fired him and, in conflict with *Lubke*, which the court adopts *infra*, improperly makes Mr. King whole for a loss that never occurred.

[38] *Lubke* actually arose under the Family and Medical Leave Act ("FMLA"), but the opinion adopted the Fifth Circuit's insurance recovery rule applied in ADEA cases as set forth in *Pearce* and *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 179 (5th Cir. 1992). *Lubke*, 455 F.3d at 499.

thereof incurred medical expenses ordinarily covered under the County's policy."); *Galindo v. Stoody Co.*, 793 F.2d 1502, 1517 (9th Cir. 1986) ("Where an employee's fringe benefits include medical and life insurance, a plaintiff should be compensated for the loss of those benefits if the plaintiff has purchased substitute insurance coverage or has incurred, uninsured, out-of-pocket medical expenses for which he or she would have been reimbursed under the employer's insurance plan.").

The one authority, *Foster v. Excelsior Springs City Hosp.*, 631 F. Supp. 174 (W.D. Mo. 1986), relied upon by Mr. King to support his position that a recovery for life insurance proceeds is not excessive, <u>actually bolsters this court's adoption and application of *Lubke*</u>, rather than causes any doubt. *See Foster*, 631 F. Supp. at 174 ("<u>Guy Foster died</u> of a heart attack on March 7, 1984, <u>and his widow, Mary Jane Foster, became the substitute plaintiff</u>.") (emphasis added). In light of evidence from a life insurance agent indicating that Mr. Foster's history made him "generally uninsurable," the *Foster* court explained its decision to deviate from the normal rule of compensating a plaintiff for the costs associated with replacement premiums and, instead, follow the exception:

> <u>This Court finds that the make-whole nature of the ADEA requires a remedy which puts the employee in the position he would have been had there been no discrimination.</u> Had Guy Foster died while employed by defendant Hospital, the plaintiff would have received $60,000.00 in proceeds. Even though the employee himself is now

deceased, when employed he had the expectation and security of
knowing his spouse would be financially taken care of through his life
insurance. Clearly, it is the *proceeds*, not the *premiums*, that can make
him whole in retrospect.

*Foster*, 631 F. Supp. at 175 (emphasis by underlining added).

Thus, *Foster* does not help Mr. King on the issue of excessiveness because he
did not die and so no loss occurred. Consequently, Mr. King's recovery for lost life
insurance is limited to what he actually incurred in replacing that coverage, and the
jury's compensatory damages award should be remitted by $450,000 to cure the
verdict's legal (versus evidentiary) excessiveness.

To the extent that CVS offers some persuasive arguments about problems with
other components of Mr. King's damages computation that might have been decided
in CVS's favor had they been timely raised and developed at trial, the court is not
convinced that these damages issues are so "apparent" (Doc. 208 at 2) that remittitur
relief for their excessiveness is warranted, especially when CVS did not find the flaws
to be obvious enough to bring them to the court's attention during the course of the
trial.[39] Instead and, in the apparent absence of any binding guidance as to whether the

---

[39] For example, Rule 51(a)(2) expressly provides the parties with the opportunity to suggest
additional instructions to the court after the close of evidence:

**(2)** *After the Close of the Evidence.* After the close of the evidence, a party may:

**(A)** file requests for instructions on issues that could not reasonably
have been anticipated by an earlier time that the court set for requests;

court can even appropriately order remittitur relief to a party that failed to object to the introduction of a damages exhibit that it attacks post-judgment as the primary offending source behind the jury's excessive award, the court will let the jury's determination of Mr. King's compensatory damages stand, with the notable exception of his legally excessive recovery for life insurance proceeds as discussed *supra*.

Accordingly, CVS's Remittitur Motion is **GRANTED IN PART** and otherwise **DENIED**. Further, Mr. King is **HEREBY ORDERED** to either accept or reject the court's proposed remittitur by filing a notice of acceptance or rejection no later than 30 days from the entry date of this order. If Mr. King accepts the court's remittitur of $450,000 in compensatory damages, then the court will enter an amended final judgment in the amount of $1,230,766.30, which is consistent with that acceptance.[40] If Mr. King rejects the court's proposed remittitur, then CVS's New Trial Motion will be granted, the final judgment previously entered by the court on June 3, 2015, will

---

and

 **(B)** with the court's permission, file untimely requests for instructions on any issue.

FED. R. CIV. P. 51(a)(2)(A)-(B). To the extent that CVS believed that the court's charge on damages was inadequate in light of Exhibit 91 and Mr. King's other related evidence, it could have proposed additional language for the court to consider under Rule 51(a)(2), but it did not do so.

[40] Calculated as follows: $1,065,383.15 (awarded by jury) - $450,000 = $615,383.15; $615,383.15 X 2 (for liquidated damages) = $1,230,766.30.

be vacated entirely, and the case will be set for trial <u>as to the issue of damages only</u>. *See, e.g., Rodriguez*, 518 F.3d at 1275 ("The district court's order denying Farm Stores' motion for judgment as a matter of law is AFFIRMED in all respects, except that the part of the judgments awarding damages in favor of the twenty-six store manager plaintiffs are REVERSED, and <u>the case is REMANDED for a new trial on damages consistent with this opinion</u>.") (emphasis added).

## V.     CONCLUSION

For all the reasons explained above, CVS's Renewed JMOL is **DENIED** and CVS's New Trial Motion and Remittitur Motion are **GRANTED IN PART** and otherwise **DENIED**. Additionally, because the court finds the post-judgment issues addressed herein to be straightforward, CVS's separate request for oral argument (Doc. 200), filed on July 1, 2015, is **DENIED**. Finally, the deadline for Mr. King to indicate whether he consents to the court's remittitur of compensatory damages by $450,000, and, therefore, the final judgment by $900,000, is no later than 30 days from the entry date of this order.

**DONE** and **ORDERED** this the 23rd day of February, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge