FILED
2016 Aug-02  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **JAMES R. KING,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **CASE NO.: 1:12-cv-01715-KOB** |
| **CVS HEALTH CORPORATION** ] | |
| ] | |
| **Defendant.** ] | |
| ] | |
| ] | |

## Memorandum Opinion on Post-trial Motions

On February 19, 2015, after a two-week trial before Judge Hopkins, the jury

returned a verdict in favor of Plaintiff James R. King on his claim that CVS

Caremark Corporation[1] willfully and illegally terminated his employment as a

pharmacist because of his age. The jury awarded $1,065,383.15 in compensatory

damages, and also found that CVS willfully violated the ADEA. (Doc. 153). The

finding of willful violation entitled Mr. King to liquidated damages in an equal

amount to his compensatory damages, so on June 3, 2015, the court entered a final

judgment in favor of Mr. King for $2,130,766.30.  (Doc. 179).  That amount was

---

[1]CVS Caremark Corporation changed its name in September of 2014 to "CVS Health Corporation," but never filed a corporate disclosure statement and did not file a notice of name change. The name on the docket sheet remained CVS Caremark Corp. until June 3, 2016 when the Plaintiff filed a notice of name change.

1

later remitted to $1,230,766.30. (Doc. 213).

This case was transferred to this judge on June 13, 2016, when Judge Hopkins granted CVS's request that she recuse for the reasons explained below. With the reassignment of the case came five post-trial motions, including CVS's request that "all orders or rulings made after [August 24, 2015] should be vacated." (Doc. 236 at 10).

The court held a hearing on those motions on July 29, 2016, and made the following rulings for the reasons more fully stated on the record and summarized below:

1.  Defendant's request to vacate all of Judge Hopkins' orders or rulings after August 24, 2015 (Doc. 236) is **DENIED IN ITS ENTIRETY**.

2.  Plaintiff's Re-Filed Motion for Equitable Relief: Reinstatement and Related Relief (Doc. 229) is **GRANTED IN PART/DENIED IN PART**. The court orders that CVS reinstate Mr. King to his former position with the same terms and conditions of his employment as soon as possible;  IF new pharmacists are required to take an assessment test, Mr. King's reinstatement is subject to passage of such assessment; the Defendant shall expunge from Mr. King's employment records all references to the adverse employment actions that the jury found were pretextual, including any reference that he is "not eligible for rehire";

2

and Cody Berguson is NOT to supervise the pharmacy where Mr. King works. The court further orders that the award of back pay to the date of the final judgment shall continue at the daily rate of $516.10 for Mr. King's normal schedule that he worked before September 20, 2011, until the date he is reinstated, fails the assessment, or chooses not to work.  But the court denies Plaintiff's requests for additional conditions and oversight.

3.  Plaintiff's Re-filed Rule 59(e) Motion for Equitable Relief: Prejudgment Interest (Doc. 230) is **GRANTED.**  The Plaintiff shall recover pre-judgment interest on the full amount of the damages awarded to him from the date of his termination on September 20, 2011 until the date of the final judgment entered this date at the IRS Prime Rate for underpayment by corporations, which is 5% until April 1, 2016, then 6% to the date of judgment, compounded quarterly.

4. Plaintiff's Re-Filed Motion for Supplemental Back Pay and Liquidated Damages from the Date of the Verdict to the Entry of Final Judgment (doc. 215) is **GRANTED.**  The court awards Mr. King back pay in the amount of **$266,307.16** and liquidated damages in the same amount for a total additional damage award of **$532,614.32.**

5. Plaintiff's Re-Filed Motion for Equitable Relief: Tax Consequences of Judgment (doc. 183) is **DENIED.**

3

Having ruled on all post-trial motions, except Plaintiff's Motion for Attorney Fees, which is not under submission, the court will enter a separate Third Amended Final Judgment in favor of the Plaintiff James R. King and against CVS Health Corp. in the total amount of $**1,880,296.87,** which includes $**881,690.76** as back pay from September 20, 2011 to the date of this judgment, an equal amount for liquidated damages ($**881,690.76**), plus interest at 5% until April 1, 2016, then interest at 6% compounded quarterly; and will order the immediate reinstatement of Mr. King to the same position and pay as he held when terminated, subject to the additional terms contained in this Memorandum Opinion.

## DISCUSSION

I.  Defendant's Motion to Vacate (Doc. 236)

In response to Judge Hopkins' Conflict Disclosure Notice (Doc.  224) entered on March 14, 2016, CVS filed Defendant's Response to Conflict Disclosure and Motion to Disqualify (Doc. 236), which also included the request that "all orders or rulings made after [August 24, 2015] be vacated." (Doc. 236 at 10, 11).  Judge Hopkins gave the Plaintiff an opportunity to respond. (Doc.  237). Mr. King filed his Response to the Court's Conflict Disclosure and Opposition to Defendant's Motion to Disqualify (Doc. 241); he distinguished the cases cited by

4

CVS and argued that this situation comes within the safety valve provided by 28 U.S.C § 455(f) and did not require Judge Hopkins' disqualification.  Nevertheless, on June 13, 2016, Judge Hopkins granted CVS's motion for disqualification but did not address its request to vacate all orders entered from August 24, 2015 until April 14, 2016. (Doc. 248).  When the case was transferred to this judge, the motion to vacate came along with the other pending post-trial motions.

CVS argues that "the appropriate remedy is retroactive disqualification and vacatur" and seeks "to vacate all of Judge Hopkins' orders entered after August 24, 2015." (Doc. 236 at 10, 11).  Before addressing the substance of the orders CVS seeks to vacate, the court first examines whether vacating any of Judge Hopkins' entered orders during the eight months she held CVS stock is required.

The question of judicial disqualification is addressed  by 28 U.S.C. § 455, which reads in part as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> > . . .
> > **(4)**He *knows* that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a *financial interest* in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the

proceeding;

(emphasis added).

Subsection (d)(4) defines "financial interest" as "ownership of a legal or equitable interest, however small." Thus, under § 455(b)(4), Judge Hopkins should have disqualified herself when she purchased stock in "CVS Health Corp." *if* she *knew* of the conflict.

Indeed, prior to the addition of subsection (f) to § 455 in November of 1988, any judge who inadvertently was or became disqualified would be removed from a case, regardless of the circumstances or the effect on the litigation. See *In re Cement & Concrete Antitrust Litigation*, 515 F. Supp. 1076 (D. Ariz. 1981). But as the Supreme Court recognized, "A conclusion that a statutory violation occurred does not, however, end our inquiry. As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance. There need not be a draconian remedy for every violation of § 455(a)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861 (1988).

Congress itself recognized the disruption caused in cases and to litigants when a "draconian remedy" is imposed, and added section (f) "specifically as a safety valve to avoid costly and inefficient disruption of cases when the financial

6

interests at stake are *de minimis*."  *Key Pharmaceuticals, Inc. v. Mylan*

*Laboratories, Inc.,* 24 F. Supp.  2d 480, 483 (W.D. Pa. 1998) (citing 1988 U.S.

Code Cong. & Admin. News at 6029-30).

After the *Liljeberg* decision, Congress amended 28 U.S.C. § 455 to add

section (f), which reads:

> (f)     Notwithstanding the preceding provisions of this section,
> if any justice, judge, magistrate judge, or bankruptcy judge to whom a
> matter has been assigned would be disqualified, *after substantial
> judicial time has been devoted to the matter,* because of the
> appearance or discovery, after the matter was assigned to him or her,
> that he or she individually or as a fiduciary, or his or her spouse or
> minor child residing in his or her household, has a financial interest in
> a party (*other than an interest that could be substantially affected by
> the outcome*), *disqualification is not required if* the justice, judge,
> magistrate judge, bankruptcy judge, spouse or minor child, as the case
> may be, *divests himself or herself of the interest* that provides the
> grounds for the disqualification.

(emphasis added).

CVS acknowledged that "Judge Hopkins, having divested herself of the

stock, has cured the need to disqualify herself under 28 U.S. C. § 455(b)(4)."

(Doc. 236 at 2). However, it argued that she was required to disqualify herself

under § 455(a) because her "impartiality might reasonably be questioned." *Id.*. The

facts that CVS cites for such impartiality are that the "relationship of  CVS Health

to CVS Caremark is obvious" and that Judge Hopkins "made significant decisions

on the merits." (Doc. 236 at 9).

If such allegations were sufficient to mandate disqualification, § 455(f) would have very little opportunity to serve its purpose as a safety valve and avoid inefficient disruption of cases in which "substantial judicial time has been devoted to the matter."  It could only apply in cases where the judge devoted "substantial judicial time" to babysitting a case without any significant decisions on the merits. This judge does not question Judge Hopkins' sincere decision to recuse when CVS challenged her appearance of impartiality; Judge Hopkins takes her ethical responsibilities very seriously.  The hyperbole in CVS's submission, however, may reflect its strategic interest in further delaying Mr. King's recovery or in "judge shopping" rather than concerns about ethics.  This court discusses the disqualification standards and CVS's argument as they form the foundation from which to consider CVS's motion to vacate all rulings after August 24, 2015 when Judge Hopkins inadvertently purchased CVS stock.

In making its argument, CVS relies on two cases decided before the addition of section (f),[2] and the extreme case of *Chase Manhattan Bank v. Affiliated FM Ins. Co.*,  343 F.3d 120 (2d Cir. 2003), where the Second Circuit

---

[2] The Supreme Court decision in *Liljeberg* and its underlying decision *Health Servs. Acquisition Corp. v.  Liljeberg,* 796 F.2d 796, 802 (5th Cir. 1986).

ordered the disqualification of a judge who presided over a bench trial, awarded a multimillion dollar judgment in favor of the entity in which he held several hundred thousand dollars of stock,  and then handled remand proceedings – all after the conflict appeared; the Circuit Court also vacated all of his rulings. *See* (Doc. 236 at 3-9).

In *Chase Manhattan Bank*, the style of the case originally identified one of the six plaintiffs as Chemical Bank;  Chemical Bank merged with The Chase Manhattan Bank, and the merged entity continued to operate under the Chase Manhattan name. After the merger, but before the case was assigned to him, Judge Pollack, his wife, and a family trust purchased between $250,000 and $300,000 of stock in Chase Manhattan Bank.  When the case was reassigned to Judge Pollack, neither the style of the case nor the corporate disclosure statement had been revised to reflect the merger or Chemical Bank's new name. 343 F. 2d at 124. Judge Pollack then presided over a bench trial that lasted three-and-a-half weeks,  and rendered a $92 million judgment in favor of the banks in 1997.  After being partially reversed and receiving the mandate for remand in August of 2000, Judge Pollack, while reviewing the record, saw that Chemical Bank was now known as Chase Manhattan Bank.  For the first time, he realized that Chemical Bank had merged with the Chase Manhattan Bank prior to his ruling in 1997.

9

Judge Pollack immediately divested himself of the stock, advised the parties of the discovery and his divestiture,  and then conducted the requisite proceedings on remand over the stringent objections of the defendant.  *Id*. at 125-26.

The Second Circuit held that Judge Pollack's divestiture in that case could not cure the past appearance of a disqualifying financial interest at the time of trial and entry of the $92 million verdict in favor of Chase and the other five banks. *Chase Manhattan,* 343 F.3d at 123.  The court noted that Judge Pollack's disqualifying circumstance appeared in 1997, and he should have disqualified himself at the very latest before issuing his decision on the merits in July 1997. *Id*. at 128.  The court pointed to numerous indications that the judge should have known of his conflict; they included the intense media coverage of the merger, references early in his involvement with the case  to "Chemical Bank (now known as The Chase Manhattan Bank)," the testimony of witnesses at trial about the merger of Chemical and Chase, and the judge's written findings of fact that referred to the lead plaintiff as "Chemical Bank (now know [sic] as The Chase Manhattan Bank)."  The court found that these factors might lead a reasonable person to conclude that the judge knew of his $250,000 to $300,000 financial interest in Chase Manhattan Bank at the time he rendered the $92 million verdict for the plaintiffs. *Id*. at 128-29.

10

The court found that § 455(f) divestiture in 2000 after entry of judgment would not go far enough to eliminate the appearance of partiality.  *Id*. at 132. In doing so, the court noted:  "While Section 455(f) allows a judge to divest a newly-discovered qualifying interest and continue to preside of over a case, that divestiture cannot cure circumstances in which recusal was required years before and important decisions have been rendered in the interim." *Id*. at 131.  Therefore, the Second Circuit found Judge Pollack's denial of the recusal motion was an abuse of discretion, vacated all decisions made in the case after it was assigned to him, and remanded the case for resolution with a different judge.

In its motion to disqualify Judge Hopkins and vacate her rulings, CVS argues that, during the eight months she owned CVS stock, her "role in presiding over this case since she purchased CVS stock has been anything but 'technical' – she has made significant decisions on the merits." (Doc. 236 at 9).  It compares her role in presiding over this case to that of the judge in *Chase Manhattan Bank*.

This judge finds that, contrary to CVS's assertion, the *Chase Manhattan Bank* case did not involve a "situation nearly factually identical to the one this Court confronts." (Doc. 236 at 4). The situation in this case is far from the scenario in *Chase Manhattan Bank*.  Unlike the disqualified judge in that case, Judge Hopkins *did not own stock* in CVS by any name when the case was assigned to her

11

in 2012; she *did not preside over a bench trial* – or a jury trial – while she owned

CVS stock; she did not enter a multi-million dollar judgment in favor CVS when

she owned hundreds of thousands of dollars of its stock; and she did not realize

her conflict three years after she entered findings of fact specifically naming the

entity in which she knew she owned stock. Cf. *Chase Manhattan Bank*, 343 F.3d

at 123-126. Instead, she inadvertently purchased CVS stock six months *after* the

jury trial of this case and two months *after* the entry of the Amended Final

Judgment Order in favor of the Plaintiff and against CVS for $2,130,766.30.

Further, during six of the eight months in which she owned the stock, nothing at

all is reflected on the docket sheet of this case; the first entry after her purchase was

on February 16, 2016 when one of CVS's attorneys moved to withdraw and Judge

Hopkins granted the request. (Docs. 209 & 210)[3].

The court finds that Judge Hopkins, unlike the judge in *Chase Manhattan Bank*, only entered one substantive ruling while holding CVS shares. On February

23, 2016, she issued the Memorandum Opinion and Order (Doc. 211), in which she

denied CVS's motions under Rule 50 and 59, but granted its request for remittitur;

the court made the common sense ruling that Mr. King's damages should not

---

[3]Although CVS in its written submission argued that *all* rulings during those eight months must be vacated, at the hearing, counsel conceded that this ruling should stand, and that only "substantive" rulings should be vacated.

include the $450,000 face amount of life insurance death benefits because he has

not died.  Mr. King accepted the remittitur of $900,000, which included the

liquidated damage award (Doc. 212), and Judge Hopkins entered the Second

Amended Final Judgment Order (Doc. 213) on March 1, 2016.  Because the

Second Amended Final Judgment Order only effectuated the remittitur ordered in

the prior ruling, the court does not consider it to be a separate, stand-alone

substantive ruling.

CVS argued at the hearing that the Order lifting the stay on briefing of the

Plaintiff's post-trial motions (Doc. 223) was also a "substantive" ruling that must

be vacated.  As noted in that Order, Judge Hopkins had previously granted CVS's

motion to stay "all further proceedings on Plaintiff's post-trial motions pending the

disposition of CVS' post-trial motions." (Doc. 190). That stay expired on its own

when Judge Hopkins ruled on CVS's post-trial motions on February 23, 2016. *See*

(Doc. 211). The Order further allowed the Plaintiff to refile his previously filed

post-judgment motions and gave the Defendant the opportunity to respond to those

motions. This court cannot fathom how this Order that does not rule on any

material matter but merely allows proceedings to continue can be deemed

substantive.  Indeed, until the court rules on the Plaintiff's post-trial motions,

except for his motion for attorney fees, CVS cannot proceed with its appeal, which

it filed prematurely. *See* (Doc. 216, 217, 218, 219, and 222).

Thus, the only substantive ruling this court will consider as to CVS's motion to vacate is the Memorandum Opinion and Order (Doc. 211) entered February 23, 2016.  That Opinion addressed CVS's Motion for Judgment as a Matter of Law (Doc. 197); Motion for New Trial (Doc. 198); and Motion for Suggestion of Remittitur in the Alternative to the Motion for Judgment as a Matter of Law and Motion for New Trial (Doc. 199).  The Motion for Judgment as a Matter of Law and the Motion for New Trial renewed and rehashed the motions made by CVS at the close of the Plaintiff's case (Doc. 148); at that time, Judge Hopkins granted the motion as to all the Plaintiff's state law claims and dismissed Cody Berguson as a Defendant, but reserved ruling on the motions as to the age discrimination claim. CVS renewed that Motion at the close of all the evidence (Doc. 149); Judge Hopkins orally denied that motion as to the age discrimination claim,  and submitted that claim to the jury. *See* (Doc. 171 at p. 56). After the jury returned its verdict in favor of Mr. King, Judge Hopkins allowed briefing on CVS's motion (*see* Doc. 156) but subsequently clarified and confirmed on June 3, 2015 that she had denied CVS's motion at trial. (Doc. 178).

This court finds that Judge Hopkins' rulings on the renewed motions for judgment as a matter of law and new trial reflected her prior rulings on the same or

similar issues.  Her denial of those motions was consistent with her reasoning in the

Memorandum Opinion and Order on Defendants' Motion for Summary Judgment

(Doc. 71) and her Orders at trial on the initial Rule 50 motions.  In all those rulings,

she found sufficient evidence to submit the age discrimination claim to the jury.

(Doc. 211 at 7).  As to CVS's Motion for New Trial, Judge Hopkins reaffirmed the

evidentiary sufficiency of the jury's verdict and her evidentiary rulings challenged

by CVS, and rebuffed its challenge to the jury charges and other rulings. In short,

she ruled the same way after she bought CVS stock as she did before she bought

CVS stock. No reasonable person would question Judge Hopkins' impartiality in

these rulings against CVS.

The only ruling Judge Hopkins made in favor of CVS while she held its

stock was the one granting a remittitur of the life insurance proceeds and

concomitant liquid damages.  Judge Hopkins found that "allowing the jury's award

of $450,000 in death benefit damages to stand would be fundamentally unfair and

excessive under the ADEA's make-whole remedial purpose." (Doc. 211 at 58). She

went on to explain that "such damages represent an unwarranted financial windfall

for Mr. King because, if he had remained employed at CVS, <u>this death benefit is

not something he would have ever received as a CVS employee because he did not

die</u>."  (Doc. 211 at 59; emphasis in original).

CVS argues that this remittitur of $900,000 while Judge Hopkins owned its stock creates the kind of impropriety § 455(a) was intended to prevent.  But the test for recusal under § 455(a) is whether a reasonable person *knowing all the facts* would question a judge's impartiality. *Yeyille v. Miami Dade Ctny. Pub. Sch.*, 2016 WL 3058868 (11th Cir. May 31, 2016) (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)) ("The test is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal is sought would entertain significant doubt about the judge's impartiality.").  No reasonable person knowing that the remittitur was for death benefits for a man who was still alive would question Judge Hopkins' impartiality in such a common sense decision.

Having found that no reasonable person knowing all the facts would question the impartiality of Judge Hopkins' decisions in the one substantive ruling she made while holding CVS stock, the court finds no reason to vacate the Memorandum Opinion and Order entered February 23, 2016 (Doc. 211).  As an alternative ruling, if that Opinion and Order were to be vacated, this judge would enter the same rulings denying CVS's post-trial motions, except its motion for remittitur.

II. Plaintiff's Motion for Reinstatement (Doc. 229)

Mr. King seeks reinstatement to his employment as a pharmacist with CVS as part of the equitable relief authorized under the ADEA. In addition to reinstatement, Mr. King asks the court to impose certain requirements on CVS and to appoint a special master to oversee employment decisions by CVS that affect him. As an alternative remedy, he seeks front pay.

The court has discretion in selecting the equitable remedies, so long as the relief granted is consistent with the purposes of the ADEA. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1561 (11th Cir. 1988). "The purpose of the ADEA . . . is to make the plaintiff 'whole,' to restore the plaintiff to the economic position that the plaintiff would have occupied but for the illegal discrimination of the employer." *Id*.

In fact, the ADEA provides that "the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, *reinstatement* or promotion, . . ." 29 U.S.C. § 626 (emphasis added). "[R]einstatement offers the most likely means of making a plaintiff whole by allowing h[im] to continue h[is] career as if the discrimination had not occurred." *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1238 (11th Cir. 1999). As a

result, the Eleventh Circuit "ha[s] fashioned a rule of 'presumptive reinstatement' in wrongful discharge cases for victorious plaintiffs." *Id*. (citing *Williams v. Roberts*, 904 F.2d 634, 639 (11th Cir. 1990)).

Reinstatement may not always be feasible.   "[W]hen extenuating circumstances warrant, a trial court may award a plaintiff front pay in lieu of reinstatement." *Farley,* 197 F.3d at 1238; see also *Darnell v. City of Jasper*, 730 F.2d 653, 655 (11th Cir. 1984).

CVS argues that reinstatement is not appropriate or feasible in this case because of the current hostile and antagonistic relationship between Mr. King and his former supervisor Cody Burgeson.  CVS points to Mr. King's request for special oversight as evidence of the hostile relationship. Indeed, Mr. King named Mr. Burgeson as a Defendant and asserted state law claims against him for slander, defamation, and invasion of privacy, which Judge Hopkins dismissed at trial. The Eleventh Circuit, however, has recognized "that the presence of some hostility between parties, which is attendant to many lawsuits, should not normally preclude a plaintiff from receiving reinstatement.  Defendants found liable of intentional discrimination may not profit from their conduct by preventing former employees unlawfully terminated from returning to work on the grounds that there is hostility between the parties." *Farley,* 197 F.3d at 1339.

The court recognizes that the relationship between Mr. King and Mr. Berguson may not be a cordial one, and that Mr. King may have valid reasons to ask for additional equitable relief to ensure that his supervisor treats him fairly. Mr. Berguson's questions and statements to Mr. King about his age and retirement plans, followed closely by disciplinary actions that ultimately resulted in termination, as well as other matters too lengthy to discuss here, may have been part of the jury's basis for finding that CVS willfully violated the ADEA when it terminated Mr. King.  The evidence at trial also showed that Mr. Berguson had made similar comments to other pharmacists about their age before they were terminated, again providing support for the jury's finding of a willful violation. This evidence, as well as many of the arguments CVS makes in its briefs, raise questions for the court about whether Mr. Berguson – and CVS – understand the full nature of the antidiscrimination laws, particularly the ADEA, and that Mr. King may need some protection from retaliation by Mr. Berguson and CVS.  These concerns, however, or the argument by CVS about hostility, are neither sufficient nor of the type of extenuating circumstances that make reinstatement in this case unfeasible.

The court rejects Mr. King's requests that would in effect make the court the HR department for CVS.  Instead, it finds that requiring CVS to reinstate Mr. King

to the same position at the same store with the same terms and conditions of employment *except* prohibiting Mr. Berguson from supervising that store best accomplishes the remedial nature of the ADEA.

Only after the court indicated its intent at the hearing to order reinstatement did counsel for CVS begin raising other factors to question the feasibility of reinstatement. The court refused to consider such challenges not contained in briefing, but with one exception.  Counsel referenced a requirement of an "assessment" before a pharmacist could be hired, or perhaps the "assessment" only applied for a pharmacist-in-charge position.  IF CVS requires a written assessment of all newly hired pharmacists before they can begin work, then reinstatement of Mr. King, who has not practiced pharmacy for five years, is conditioned upon his ability to pass such assessment.  The court cautions CVS that any assessment it may require must be identical to any such assessment made of any pharmacist who applies for the position Mr. King held when he was terminated.

As stated on the record at the hearing, the court's award of back pay shall continue at the daily rate of $516.10 until Mr. King is either reinstated or fails the assessment or decides he does not want to return to work.

III. Plaintiff's Motion for Prejudgment Interest (Doc. 230)

Mr. King requests the court to award him prejudgment interest from the date

of his termination on September 20, 2011 until the time the court enters final judgment following the resolution of these post-trial motions.

Prejudgment interest is a discretionary remedy available in ADEA cases. *Lindsey v. Am. Cast Iron Pipe, Co.*, 810 F.2d 1094, 1101 (11th Cir. 1987). "Prejudgment interest, as a legal matter, is intended to compensate injured parties both for the time value of lost money as well as for the effects of inflation." *Garner v. G.D. Searle Pharm. & Co.*, 2013 WL 568871 (M.D. Ala. Feb. 14, 2013) (citing *United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998)). Thus, prejudgment interest is "an element of complete compensation." *Loeffler v. Frank*, 486 U.S. 549, 557 (1988) (citing *West Virginia v. United States*, 497 U.S. 305, 310 (1987)).

CVS argues that the court should not exercise its discretion in awarding prejudgment interest because its contends that Mr. King's damages were inflated; that Mr. King received a "windfall" in the form of liquidated damages; that Mr. King violated the law and CVS's governing policy; and the need for prejudgment interest is reduced because of the relatively low rate of inflation between 2011 and 2016. (Doc. 244 at 3). Alternatively, CVS argues that, if the court chose to award prejudgment interest, Mr. King's initial prejudgment interest calculation was excessive.

As extensively discussed on the record during the motion hearing, the court

puts no stock in CVS's continual challenge to the jury verdict. The jury determined

Mr. King's damages, based largely on unchallenged evidence, and found that CVS

terminated him because of his age willfully. (Doc. 153). The court will not second-

guess or ignore the jury's findings of fact while considering the Plaintiff's motion

for equitable relief. Additionally, the court may not consider the liquidated

damages in determining prejudgment interests:

> A district court may not factor in the liquidated damages award when
> considering equitable relief because liquidated damages are punitive in
> nature. Punitive damages are imposed on a defendant to punish him or
> to set an example for others; they are awarded to plaintiffs *in addition
> to* compensatory or actual damages.  Liquidated damages are not
> meant to replace equitable relief under the ADEA.

*Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1562 (11th Cir. 1988) (citations

omitted).[4]

 Nor is the court persuaded by CVS's argument that "relatively low rate of

inflation" since the time of Mr. King's termination justifies denying him

prejudgment interest. Although the court considers the inflation rate in determining

prejudgment interest, the award of prejudgment interest does not turn on

consideration of the inflation rate alone.  Instead, the court must look at the

---

[4]At the hearing, CVS argued that the Eleventh Circuit's prohibition from considering
liquidated damages in deciding prejudgment interest in *Castle v. Sangamo Weston, Inc.* is dicta
and unbinding on the court.  However, even if the court considers Mr. King's liquidated damage
award, the court's ruling on prejudgment interest would not differ.

inflation rate and the time value of lost money.  *See City of Warren*, 138 F.3d 1083.

Other factors also affect the court's exercise of discretion in awarding prejudgment interest for the lost value of wages to Mr. King. Because CVS illegally terminated his employment, Mr. King had to apply for Social Security benefits earlier than he planned and also had to draw from his IRA account to pay his living expenses for his family.  The award of prejudgment interest will help, to a limited extent, to offset not only the lost value of his wages but also the real financial consequences of his termination. Under the circumstances of this case, the court finds that the need to compensate Mr. King both for the time value of lost money as well as for the effects of inflation necessitate the award of prejudgment interest.

Having decided that Mr. King is entitled to prejudgment interest, the court must decide the question of which interest rate applies.  The parties agree that the court must base its award of prejudgment interest on the IRS prime rates. The Eleventh Circuit "decided that the interest rate for prejudgment interest on back pay awards under Title VII depends on the IRS prime rates as calculated in accordance with 28 U.S.C. § 1961. . . . We see no reasons that the rate should differ under ADEA . . . ." *McKelvy v. Metal Container Corp.*, 854 F.2d 448, 453 (11th Cir. 1988).

23

However, multiple prime rates exist under 26 U.S.C. § 6621, and the parties did not agree on which one should apply here. The statute provides both underpayment and overpayment rates applicable to corporations and non-corporations. As explained more thoroughly on the record, the court finds that the corporate underpayment rate best serves the purposes of the ADEA to make Mr. King "whole."  In making this determination, the court has taken into account Mr. King's loss of use of wages, lost investment, loss of continued investment into his IRA, and his early drawing of social security benefits. The court also considers that this rate would apply to CVS if it had underpaid taxes; because it failed to pay Mr. King any of the money due to him, this rate seems most appropriate.

The National Labor Relations Board provides that "interest should be compounded on a daily basis, rather than annually or quarterly." *Jackson Hosp. Corp. D/B/A Kentucy River Med. Center*, 356 NLRB 6 at *8. However, Mr. King has only requested interest be compounded quarterly.  Therefore, the court concludes that the interest in this case shall be compounded quarterly, rather than on a daily basis.

Finally, the court finds that Mr. King is due prejudgment interest from the date of his termination on September 20, 2011 through the date of the entry of the final judgment. Notably, in its briefing on this issue, CVS did not assert that the

24

prejudgment interest calculation stopped prior to the court's resolution of these post-trial motions and entry of judgment.  Instead, CVS merely challenged which IRS prime rate applied and whether interest should be compounded.  (*See* Doc. 244 at 4) (CVS calculating prejudgment interest rates through June 30, 2016).  In fact, CVS admits that "[e]ven using the IRS large corporate underpayment rate as the basis for calculation, . . . quarterly compound interest would yield a total interest of $100,936.16 as of June 30, 2016." (Doc. 244 at 5).

However, at the hearing, CVS took a different approach and argued for the first time that Mr. King's prejudgment interest should only be calculated to an earlier date when it contends Mr. King's damages were ascertainable. In support of its new contention, CVS cites *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320 (11th Cir. 1999).  In *Johansen*, in a nuisance and trespass action, a jury awarded plaintiffs punitive damages totaling $45 million, and the district court later reduced the punitive damage award to $4.35 million.  The Eleventh Circuit reviewed whether plaintiffs were entitled to *postjudgment* interest on the $4.35 million judgment from the date of an initial judgment or from when the court actually entered the reduced judgment. *Id.* at 1339-40. In determining the plaintiffs were due *postjudgment* interest from the date of the initial judgment, the Court concluded that *postjudgment* interest began to accrue from the date that damages

25

were clearly ascertained.  *Id.* at 1340.

This case at issue is distinguishable from *Johansen* for several reasons. First *Johansen* involved postjudgment interest, not prejudgment interest. And second, the extent of Mr. King's damages were not ascertainable upon the jury verdict awarding him damages and finding CVS in willful violation of the ADEA nor were they ascertainable when the court entered the remittited judgment.  Instead, the court has had to determine numerous post-trial issues before the extent of  Mr. King's damages were known and readily ascertainable.

Because the court finds that *Johansen* is not controlling in this case, that CVS failed to raise this issue in its briefing opposing Mr. King's motion, and that CVS appears to have admitted the prejudgment interest calculation runs through at least June 30, 2016, the court further finds that Mr. King is due prejudgment interest from the date of his termination on September 20, 2011 though the date of the entry of accompanying judgment. Accordingly, the court will award Mr. King prejudgment interest from September 20, 2011 through August 2, 2016 in the sum of $116,915.35, as calculated in Exhibit A to the Third Amended Final Judgment.

## IV. Plaintiff's Motion for Supplemental Back Pay and Liquidated Damages (Doc. 232)

Mr. King seeks an award of back pay from the date of the jury's verdict on

February 19, 2015 until the entry of the final judgment, plus an equal amount in liquidated damages.  As previously noted, the remedial purpose of the ADEA is to "make the plaintiff 'whole,' to restore the plaintiff to the economic position that the plaintiff would have occupied but for the illegal discrimination of the employer." *Castle*, 837 F.2d at 1561. Without an award of back pay to cover the almost 18 months since the jury verdict, Mr. King would be uncompensated for a significant amount of time and would not be made whole.  In fact, failing to extend a back pay award to the entry of the final order would be error.  *See Nord v. U.S. Steel Corp.,* 758 F.2d 1462, 1473 (11th Cir. 1985).

As stated at the hearing, the court awards Mr. King back pay at the rate of $183,732.14 annually and an equal amount as liquidated damages from the date of the jury award until the entry of final judgment.  As a further component of equitable relief and to support the court's Order to promptly reinstate Mr. King, this award of pay shall continue at the rate of $516.10 per day until Mr. King is reinstated or fails to pass the assessment or otherwise decides not to return to work.

V.  Plaintiff's Motion for Tax Consequences of the Judgment

Mr. King makes a novel but very appealing argument.  He correctly asserts that the lump sum award of back pay in this case will significantly affect his taxes. Indeed, "receipt of a lump sum back pay award could lift an employee into a higher

tax bracket for that year, meaning the employee would have a greater tax burden than if [he] were to have received that same pay in the normal course." *Eshelman v. Agere Systems, Inc*., 554 F.3d 426, 441 (3d Cir. 2009). An award of additional sums to offset that increased tax burden makes logical sense.

However, the Eleventh Circuit has not spoken on this question; it neither mandates nor prohibits such an award by its silence. Any such award, however, would need evidentiary support. *Garner v. G.D. Searle Pharms. & Co.*, 2013 WL 568871, at *15 (M.D. Ala. Feb. 14, 2013).  As a matter of fact, both Mr. King and CVS request additional time for discovery on this issue if the court were to grant such relief.

Mr. King has waited long enough.  CVS wrongfully terminated him on September 20, 2011.  The jury returned a verdict in his favor on February 19, 2014. He has been unemployed for almost five years without pay. The court does not want to see his recovery delayed even further in what would surely be a long, drawn out discovery period that would more than likely devolve into a battle of the tax experts.  He is entitled to a *final* final judgment, reinstatement to his job, and payment of the wages and liquidated damages due from CVS.  The court, in its discretion, refuses to award this novel, though appealing, item of damages without evidentiary support of it, and refuses to delay entry of judgment any longer to allow

the obtaining of such evidentiary support.

## Recap and Calculation of Damages

In his submissions prior to the hearing, Mr. King provided a calculation of damages due.  At the hearing, his counsel offered to provide a revised calculation that reflected the court's rulings and included back pay and interest.  The court received that calculation via email that was also sent to defense counsel. After the court emailed all counsel with the request for calculations specifically to August 2, 2016, the court received a revised calculation. CVS has not challenged this calculation, except to provide its version of calculations consistent with its *Johansen* argument, which this court has rejected. The court has relied on the emailed calculation for the amounts set out in Exhibit A to the Third Amended Final Judgment entered this day.

By separate Order, the court will enter final judgment in favor of James R. King and against CVS in the amount of $1,880,296.87, and will order that CVS promptly reinstate him to the position he held prior to termination under the conditions contained in this Memorandum Opinion.

DONE and ORDERED this 2nd day of August, 2016.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE