**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **JAMES R. KING,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]     **1:12-CV-1715-KOB** |
| **CVS HEALTH CORPORATION.,** | ] |
| | ] |
| **Defendant.** | ] |
| | ] |
| | ] |

**MEMORANDUM OPINION**

This matter currently comes before the court on Plaintiff's motions for attorney's fees and costs. On February 19, 2015, a jury returned a verdict in favor of Plaintiff James R. King and against Defendant CVS on Mr. King's claims under the Age Discrimination in Employment Act. (Doc. 153). In accordance with this verdict, the jury awarded Mr. King both compensatory and liquidated damages.

Mr. King initially filed ten counts consisting of four statutory claims and various state law claims against CVS and a second defendant, Cody Berguson. Before the trial, the court dismissed all of Mr. King's statutory claims except the age discrimination claim; dismissed one of Mr. King's state law claims in full; and dismissed some of Mr. King's other state law claims in part. The case proceeded to trial on Mr. King's claims against CVS and Berguson on the ADEA claim and five state law claims. At the close of Mr. King's evidence, the court dismissed Berguson from the case and dismissed all Mr. King's claims against CVS except for the ADEA claim.

After prevailing on his ADEA claim against CVS and accepting a remittitur,[1] Mr. King received an award of $1,230,766.30. The court then awarded Mr. King back pay in the amount of $266,307.16 and liquidated damages in the same amount for a total additional award of $532,614.32. (Doc. 264). This case is now before the court on Mr. King's motion for attorney's fees and costs (doc. 233), and supplemental motion for attorney's fees (doc. 267). Mr. King asks this court to award him $1,077,335.40 in attorney's fees (doc. 267-9); $19,387.97 in expenses (doc. 234-21 at 11); and $17,199.95 in statutory costs (docs. 187; 234-20).

For the reasons set out in this Memorandum Opinion, the court will **GRANT** in part and **DENY** in part Mr. King's motions for attorney's fees and expenses. Specifically, the court will **AWARD** Mr. King $889,627.10 in attorneys' fees and $36,160.46 in costs and expenses, for a total of $925,787.56. The court will enter a separate Order consistent with this Memorandum Opinion.

## I.    Discussion

Mr. King seeks recovery of his attorneys' fees, along with costs and expenses, under 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b) by reference, which allows the court to award reasonable attorneys' fees and court costs to the prevailing party in ADEA cases. CVS does not contest Mr. King's status as a prevailing party, but argues that his requested fee award is unreasonable because (1) it seeks excessively high hourly rates for Mr. King's attorneys; (2) the number of hours Mr. King's counsel purportedly spent on the case is excessive; and (3) the fee award should be reduced to reflect Mr. King's limited success on his claims. In addition to these

---

[1]The jury awarded Mr. King $2,130,766.30, finding in his favor on both age discrimination and willfulness claims. The case was reassigned to the undersigned judge several months after trial. (Doc. 248).

objections, CVS also objects to specific statutory costs and litigation expenses that Mr. King

seeks in his Bill of Costs and Time and Expense Report. The court will first determine an

appropriate award for attorney's fees, then an appropriate award for costs and expenses.

**A. Attorneys' Fees**

The "starting point" in the objective determination of the value of lawyers' services is to

calculate a "lodestar" figure, that is, "to multiply hours reasonably expended by a reasonable

hourly rate." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)

(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Supreme Court has "established a

'strong presumption' that the lodestar represents the 'reasonable fee' . . . ." *Burlington v. Dague*,

505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,

478 U.S. 546, 565) (1986) (*Delaware Valley I*)).

In determining the lodestar figure, the court may take into account the factors set forth in

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).[2] *See Hensley,* 461 U.S.

at 434 n.9. The twelve factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill required to perform the legal services properly;
> (4) the preclusion of other employment by the attorney due to
> acceptance of the case; (5) the customary fee in the community; (6)
> whether the fee is fixed or contingent; (7) time limitations imposed
> by the client or circumstances; (8) the amount involved and the
> results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10 the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12)
> awards in similar cases.

*Johnson*, 488 F.2d at 717-19. Many of the *Johnson* factors "are subsumed within the initial

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9; *see Delaware Valley I*, 478 U.S. at 566 (reaffirming that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.").

1.  Reasonable Hourly Rate

Mr. King provided an itemized billing statement that includes the hours his attorneys worked on this case, along with their hourly rates. (Doc. 267-9). The parties dispute the reasonableness of those rates.

The Supreme Court defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). Mr. King bears the burden of producing satisfactory evidence that the rates proffered coincide with prevailing market rates. *See Norman*, 836 F.2d at 1299; *N.A.A.C.P. v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987) (citing *Blum*, 465 U.S. at 896 n.11). To meet that burden, Mr. King must offer "more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 896 n.11). Satisfactory evidence would "speak to rates actually billed and paid in similar lawsuits" and can be adduced through either opinion evidence or direct evidence of lawyers' fees charged in similar cases. *Id.*

The relevant legal community in this case is the Northern District of Alabama. *See Knight v. Alabama*, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) ("The relevant legal community is the area in which the court sits.").

The district court has discretion to "interpolate the reasonable rate based upon an analysis of the skills . . . which were exhibited by the attorney in the case at bar," and the market rates in

the relevant community; where the submissions regarding reasonable rates are inadequate, the court may rely on its own expertise. *Norman*, 836 F.2d at 1301, 1303; *see Hensley*, 461 U.S. at 437 (emphasizing that the district court has discretion in determining the amount of attorneys' fees awarded).

Mr. King has moved to recover attorneys' fees for five attorneys and six paralegals who worked on his case. He asks the court to find the following attorneys' hourly rates reasonable: Alicia K. Haynes—$485; Kenneth D. Haynes—$440; Charles E. Guerrier—$520; Leirin M. Ragan—$195; and Gina E. Pearson—$335. He also asks the court to approve an hourly rate of $125 for the six paralegals. (Doc. 267-9 at 2).

Alicia Haynes has practiced law in Birmingham, Alabama for twenty-eight years, twenty-five of which she has exclusively devoted to employment discrimination and civil rights litigation. (Doc. 185-1 at 3). She has tried dozens of jury cases, served as First Vice President of the National Employment Lawyers Association, and regularly speaks on employment discrimination and civil rights at continuing legal education seminars. Kenneth Haynes has been practicing law since 1991, and has devoted the last 16 years primarily to representing plaintiffs in employment matters, including employment discrimination. (Doc. 185-2 at 3). He has spoken at continuing legal education seminars on employment discrimination and was listed as a Super Lawyer in the area of employment law in Alabama for five consecutive years. Charles Guerrier was recently elected as President of the Alabama Chapter of NELA, and was a trial attorney for the EEOC until retiring in 2012. His career dates back to 1972, and he has litigated in numerous jurisdictions across the country since 1974. (Doc. 185-3 at 1-15). Gina Pearson has practiced law for approximately sixteen years, and Leirin Ragan is a relatively new attorney with less trial

experience.

Mr. King produced affidavits (doc. 185-10 –13) from the following attorneys to support the reasonableness of his attorneys' fees: (1) Cynthia Wilkinson, a member of the Alabama bar with twenty-one years of experience in civil rights and other complex federal court litigation; (2) Candis McGowan, a Birmingham attorney who has focused her practice on employment and civil rights litigation since 1988; (3) Heather Leonard, a Birmingham attorney who has focused her practice on the area of employment and civil rights litigation since 1998; and (4) John Saxon, named one of the Top 50 Lawyers in Alabama by Super Lawyers and specializing in the area of employment law.

Wilkinson and Leonard agree that $475 is a reasonable hourly rate for Alicia Haynes, while McGowan's and Saxon's suggestions are $450 and $500, respectively. All four of the affiants agree that $500 is a reasonable rate for Charles Guerrier. The four affiants' estimates for Kenneth Haynes range from $385 to $450. Estimates for Leirin Ragan range from $185 to $200, and range from $300 to $325 for Gina Pearson. For paralegals, all estimates fall within the range of $100 to $150.

The affiants' numbers suggest that Mr. King's attorneys' requested rates may be moderately inflated. More specifically, taking the median of their respective numbers, their testimony reflects the following reasonable hourly rates: Alicia Haynes–$475 ($10 less than the amount Mr. King seeks); Kenneth Haynes–$417.50 ($22.50 less than Mr. King's amount); Charles Guerrier–$500 ($20 less than Mr. King's amount); Leirin Ragan–$192.50 ($2.50 less than Mr. King's amount); and Gina Pearson–$312.50 ($22.50 less than Mr. King's amount).

CVS objects to Mr. King's attorneys' rates on two bases. First, CVS argues Mr.

Guerrier's experience practicing as a Birmingham-area plaintiff's attorney is quite limited, and thus the rate he seeks is unreasonably high. Second, CVS argues none of Mr. King's attorneys "opined that this case was particularly novel or difficult to litigate, that they were precluded from other employment due to this case, that King or the circumstances imposed time limitations upon them, that this case was particularly undesirable, or that they did not recognize the evidence was previously developed in another case." (Doc. 247 at 9-10).

CVS produced affidavits from Jay St. Clair and Arnold Umbach, III, two experienced labor and employment attorneys in Birmingham, Alabama. (Docs. 247-1; 247-2). They assert Mr. King's attorneys' reasonable hourly rates should be: $400 to $415 for Alicia Haynes; $345 to $365 for Kenneth Haynes; $400 to $415 for Charles Guerrier; $250 to $290 for Gina Pearson; $160 to $165 for Leirin Ragan; and $110 to $115 for all paralegals. (Doc. 247 at 11). Both Mr. St. Clair and Mr. Umbach, III understand the "top of the market" hourly rate for employment litigators in Birmingham to be in the range of $350 to $440 per hour. (Docs. 247-1; 247-2). Mr. St. Clair also noted that in 2015, Magistrate Judge England of the Northern District of Alabama found rates of $420, $370, and $475 to be reasonable rates for Alicia Haynes, Kenneth Haynes, and Charles Guerrier, respectively. (Doc. 247-1 at 6).

First, the court notes that both Mr. St. Clair and Mr. Umbach, III are experienced attorneys whose practices focus on defending employers in labor and employment suits. The *Johnson* factors "customary fee," "fixed or contingent fee," and "nature and length of the professional relationship with the client" require the court to distinguish between contingent fee rates sought by plaintiffs' employment attorneys and rates charged by defendants' employment attorneys, who get paid regardless of the outcome of the case. Plaintiffs' lawyers, by nature,

frequently work on a contingency fee basis. Defendant companies often have ongoing relationships with their attorneys that enable them to pay lower hourly rates.

Second, CVS's argument that Mr. Guerrier's time is necessarily less valuable than Ms. Haynes' is unpersuasive. As Mr. St. Clair concedes, Mr. Guerrier has "extensive knowledge and experience in the area of labor and employment law due to his 42 years of being an attorney in that arena." (Doc. 237-1). Also, Mr. Guerrier has practiced employment law in 19 federal districts, has represented clients in the Supreme Court of the United States and five separate Courts of Appeals, and has taught employment law for 18 years. His relatively short stint in Birmingham should not preclude Mr. Guerrier from collecting an hourly rate proportional to his experience. As noted above, Mr. St. Clair brought to the court's attention that Magistrate Judge England determined Mr. Guerrier's reasonable rate to be greater than Alicia Haynes'. (Doc. 247-1 at 6). The court is not convinced that Mr. Guerrier's services are less valuable than Ms. Haynes'.

The court has considered the other *Johnson* factors and finds that the requested hourly rates for Alicia Haynes, Kenneth Haynes, Charles Guerrier, Leirin Ragan, and Gina Pearson are slightly above the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation. The court bases this conclusion on its own experience in this legal market as well as the testimony of the attorneys that both parties submitted.

Although the undersigned judge did not preside over the trial of this case, and only handled post-trial motions, the court is very familiar with the quality of work of all Mr. King's attorneys, except Leirin Ragan, and recognizes they are among the best employment

discrimination attorneys in this district. But, the court is not aware of–and Mr. King has not

pointed to–any cases approving rates as high as requested here.

The court therefore finds the reasonable hourly wages for Mr. King's attorneys in this

case to be as follows: Alicia Haynes–$475; Kenneth Haynes–$420; Charles Guerrier–$500;

Leirin Ragan–$190; and Gina Pearson–$315. These amounts roughly represent the median

amount for each attorney according to the rates that Mr. King's affiants provided. Also, the court

finds $125 per hour to be reasonable payment for the paralegals who worked on Mr. King's case.

2.      Reasonable Hours Expended

The next step in computing the lodestar is to establish the number of hours reasonably

expended. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir.

1988). The Supreme Court requires a petitioner to exercise "billing judgment" in the hours

submitted; "[h]ours that are not properly billed to one's *client* also are not properly billed to

one's *adversary*." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoting *Copeland v.

Marshall*, 641 F.2d 880, 891 (1980)) (en banc) (emphasis in original)). And, if the petitioner

submits "hours that are excessive, redundant, or otherwise unnecessary," the court should reduce

the number of hours accordingly. *Id.* But, "'objections and proof from fee opponents' concerning

hours that should be excluded must be specific and 'reasonably precise.'" *ACLU of Ga. v.

Barnes*, 168 F.3d 423, 428 (11th Cir. 2000) (quoting *Norman*, 836 F.2d at 1301).

The decision about what hours are reasonably necessary "must be left to the discretion of

the court," but if the court disallows fees for work performed, it should explain which hours are

disallowed and why they are improper. *Norman*, 836 F.2d at 1301, 1304. However, "[w]here fee

documentation is voluminous, such as in the instant case, an hour-by-hour review is simply

impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). And "a district court may make a reasonable across the board reduction in hours instead of engaging in the pick and shovel work necessary to make a more precise determination." *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008), *rev'd on other grounds*, 559 U.S. 542 (2010).

Mr. King's attorneys and their paralegals spent 2,279.92 hours and 482.25 hours, respectively, on his case from November 2011 to August 2016. (Doc. 267-9).[3] CVS argues this number of hours is excessive and the court should cut them across the board by 25%. Mr. King asserts his counsel exercised "billing judgment" and removed any excessive or otherwise unnecessary hours from the lodestar. *See* (Docs. 266 at 7; 234-20: Tables 3 and 6). Multiplying these hours by the requested billing rates produces a lodestar amount of $1,077,335.40. The court has examined the number of hours submitted and now considers CVS's objections to them.

CVS argues Mr. King's counsel expended an excessive number of hours on his case for the following reasons: (1) Mr. King's counsel handled a "strikingly similar case against CVS" just over a year before trying this case, thus their time expenditures should be less than or comparable to the time spent on that case; (2) they spent an excessive number of hours on Mr. King's fee petition briefings; (3) they "expended a number of hours which were excessive, obviously related solely to state law claims (or other unsuccessful issues),[4] and/or clerical" (doc. 247 at 2); and (4) they should have delineated travel time from block entries and provided

---

[3] These hours are "net time," reflecting Mr. King's redaction of 112.95 hours of attorney time and 76.4 hours of paralegal time from the lodestar calculation for time that could be classified as unnecessary, excessive, redundant, or solely related to the state law claims. (Docs. 266 at 9; 234-1 at 17).

[4] The court addresses the issue of hours spent on unsuccessful or unrelated claims in Section 3, which deals with adjustments to the lodestar figure.

evidence to show whether that travel time was actually productive and beneficial to Mr. King.

*a. Whether fees sought in* Harris *suggest an unreasonable number of hours here*

CVS's first argument hangs on the proposition that Mr. King's attorneys' litigation in *Harris v. CVS Caremark Corporation*, No. 1:11-CV-732-VEH, 2013 WL 12133901, at *1 (N.D. Ala. Jan. 29, 2013) should have streamlined their efforts in this case, thereby resulting in fewer hours expended and fewer fees awarded. CVS provides that, like King, the plaintiff in *Harris* was a CVS pharmacist in his sixties and both cases involved an ADEA claim with overlapping witnesses. Further, Mr. King's counsel litigated both cases and tried them to a jury before the same judge within roughly the same amount of time after filing. (Doc. 247 at 5). CVS further notes that the plaintiff in *Harris* "filed a nearly identical fee petition, seeking compensation for 1145.6 hours of attorney time and 270.2 hours of paralegal time," and that "when multiplied by the requested rates, would have resulted in a total fee of $524,436." (Doc. 247 at 5). CVS then compared those numbers with the numbers Mr. King sought through the same phase of litigation in his case. The comparison revealed that Mr. King seeks compensation for 2,280.2 hours (1767 hours of attorney time and 438 hours of paralegal time),[5] totaling in excess of $805,000.[6] (Doc. 247 at 5). CVS argues the cases are too similar for such a large discrepancy, and the court should therefore cut by 25% the number of compensable hours "across-the-board."

Mr. King argues that differences between the two cases account for the discrepancy in compensable hours. For example, unlike the plaintiff in *Harris*, Mr. King had to respond to a motion to dismiss, two motions for summary judgment, and various discovery disputes. Also,

---

[5]These numbers reflect the amount of fees sought as of June 6, 2016. The amount eventually climbed to a sum of 2,762.47 hours to account for hours worked through August 8, 2016. (Doc. 267-9).

[6]The *Harris* case settled before the court determined a fee award.

CVS filed a motion to certify questions to the Supreme Court of Alabama, which required additional briefing not present in *Harris*. Mr. King further points to additional pretrial orders; CVS's change of counsel five months after the final pretrial that required additional hearings, the development of a different trial strategy, and analysis of new documents that had not been presented during discovery; and CVS's filing of nine motions in limine (compared to only five in *Harris*). Mr. King also argues that his attorneys did in fact take advantage of materials prepared in *Harris*, but that CVS's defenses in his case required greater time expenditures.

The court appreciates the differences between the two cases and how those differences contributed to a greater number of hours in Mr. King's case. However, it is not convinced that those differences warrant such a wide discrepancy in the number of hours required to litigate them. Not only did Mr. King fail to show any novel or difficult issue involved with representing him in this matter, CVS showed Mr. King's counsel had somewhat of a head start regarding the facts, legal issues, arguments, witnesses, and the defendant in this case. These are relevant issues in the court's analysis under *Johnson*.

The factors involving the time and labor required and the novelty and difficulty of the questions weigh in favor of finding that the total number of hours expended on this case are unreasonably high. Given Mr. King's attorneys' experience with employment discrimination law, along with the extent to which Mr. King's case overlapped with *Harris*, the court finds 2,762 hours to be an unreasonable amount of time for Mr. King's counsel and their paralegals to bill on this case. Thus, the court agrees that, in light of the *Johnson* factors and the court's own expertise, Mr. King seeks compensation for an unreasonable number of hours.

*b. The reasonableness of the number of hours expended on seeking attorneys' fees*

CVS also takes issue with the hours Mr. King's attorneys spent drafting Mr. King's original fee petition (doc. 184), reply brief in support of the petition (doc. 266), and supplemental fee petition (doc. 267). Mr. King asserts the original fee petition required 110 hours of attorney time and five hours of paralegal time. This amount is the equivalent of one attorney working on the fee petition for eight hours a day for 14 days. Counsel purportedly spent another 77.75 hours preparing the reply brief in support of the petition. CVS argues the 57-page brief containing quotes from *The Atlantic* magazine, Joe Biden, and Judge Posner is "long winded, contains unnecessary rehashing of events and arguments, and is simply overdone." (Doc. 268 at 4). In total, Mr. King requests compensation for at least 195 hours of attorney time devoted exclusively to seeking attorneys' fees.

The court agrees with CVS that the number of hours and pages Mr. King's attorneys spent working on his fee petition briefings is unreasonable. Spending a combined total of nearly 200 hours on the fee petition is excessive when nothing suggests the issues were particularly novel, difficult, or required a great deal of skill to decipher or argue. Nor is there before the court any other convincing justification for such a high number of hours devoted to the briefings. Therefore, in light of the *Johnson* factors and this court's own experience, the unreasonable number of hours allotted to the recovery of attorneys' fees weighs in favor of finding that Mr. King seeks compensation for an excessive number of hours.

### c. Mr. King's inclusion of hours worked on clerical or administrative matters

CVS objected to 33 of Mr. King's time entries, claiming they are "clerical in nature," and thus not recoverable. *See Hython v. Tyson Foods, Inc.*, 151 F. Supp. 3d 1252, 1261 (N.D. Ala. 2015) (fee petitioner cannot include fees for hours spent on administrative or clerical functions,

regardless of who performs them). After reviewing the entries, Mr. King agreed to exclude eight of them. But Mr. King argues the remaining entries reflect work ordinarily performed by an attorney or a paralegal, and are therefore recoverable. Having reviewed the remaining entries, along with Mr. King's rebuttals to each objection, the court does not find them to be necessarily clerical or administrative. Rather, they are reasonably considered the type of duties typically handled by an attorney or paralegal. This argument, therefore, does not weigh in favor of reducing the number of hours in the determination of the lodestar.

### d. Mr. King's inclusion of travel time

CVS objects to paying for travel time where Mr. King's counsel included travel to and from particular destinations along with other billable events within block entries. CVS argues that many courts have recognized that travel time should not be compensated, or should be compensated at a discounted rate. By failing to create separate line items for travel, CVS argues the time entries prevent the court from disallowing or discounting the fees for such travel. CVS also presented examples of courts within this circuit reducing or denying compensation for travel time where counsel did not provide evidence that counsel performed legal work during the travel. Mr. King responds with examples of cases in which district courts within the Eleventh Circuit awarded fees that compensated travel time at the attorneys' usual hourly rates.

Generally, a prevailing party's counsel's reasonable travel time is compensated on an hourly basis, "unless it was unreasonable not to hire qualified local counsel." *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). In the present case, CVS objects to 39 time entries that include travel time. Of those 39 entries, the purported travel time in 37 of them was associated with traveling to the courthouse for a hearing or trial.

One was for travel "downtown" for a deposition, and one was for travel to the Bessemer courthouse to retrieve a copy of a criminal file. Further, of those 39 entries, Mr. King's counsel included "travel time" within eight block entries where the exact amount of time spent traveling is not specified. In the eight entries where the court cannot discern the specific time purportedly spent on travel, the block entries contain significant other events that lead the court to conclude that the time entries, though not specific, are reasonable.

CVS has not provided the court with any evidence suggesting it was unreasonable for Mr. King not to hire local counsel. Nor did CVS provide any evidence or testimony suggesting Mr. King's counsel should receive a lower hourly rate for hours spent traveling. The court finds no reason to deem the time entries unreasonable given Mr. King's counsel's location and need to appear in Anniston for trial, pre-trial, and post-trial hearings. This argument does not weigh in favor of finding the number of compensable hours excessive.

### e. Reducing the number of compensable hours

To recap, the court finds that Mr. King's fee petition seeks compensation for an unreasonable number of hours. The court reaches this conclusion based on its own experience that 2,762 hours is an excessive number of hours to bill a client in an employment discrimination case of this magnitude, its finding that Mr. King's attorneys' litigation in *Harris* should have streamlined their efforts in this case, and its finding that Mr. King's counsel assigned an excessive number of hours to their briefings in support of the petition for attorneys' fees. The court does not find that Mr. King's counsel unreasonably labeled clerical or administrative tasks as "legal," nor that counsel's travel time is not compensable.

Once the court determines that a petitioner seeks compensation for "hours that are

excessive, redundant, or otherwise unnecessary," the court should reduce the number of hours accordingly. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "If the district court finds that the number of hours claimed is unreasonably high, the court may either conduct an hour-by-hour analysis or it may reduce the hours using an across-the-board cut." *Bivins v. Wrap it Up, Inc.*, 380 F. App'x 888, 891 (11th Cir 2010). *See also Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (hour-by-hour review of massive fee application is both "impractical and a waste of judicial resources."). Because the time entries and exhibits regarding Mr. King's fee petition in this case are so voluminous (totaling more than 700 pages), the court opts to reduce the hours using an across-the-board cut.

CVS asks the court to reduce Mr. King's proposed number of compensable hours by 25%–largely based upon an unreasonable discrepancy in hours invested in the *Harris* case and Mr. King's. Given that CVS's litigation strategy contributed, at least in part, to the additional work Mr. King's attorneys invested in this case, the court is unwilling to make such a large cut. Instead, the court will reduce Mr. King's proposed hours by 15%. This percentage properly reflects, on one hand, the court's finding that Mr. King's proposed hours are unreasonably high, and on the other hand, the court's appreciation for the differences between Mr. King's case and the *Harris* case.

Mr. King seeks compensation for 2,762.47 hours of attorney and paralegal time. (Doc. 267-9). Reducing that number by 15% yields a total of 2,348.1 compensable hours. More specifically, the court will use the following reduced figures to determine the lodestar: Alicia Haynes–867.26; Kenneth Haynes–283.82; Charles Guerrier–499.69; Leirin Ragan–265.2; Gina Pearson–22.23. The number of compensable hours of paralegal time is reduced from 482.25 to

409.91 hours.

3.    Adjustments to the Lodestar

The Supreme Court has acknowledged that, in some cases, the initial calculation of the lodestar "does not end the inquiry." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Downward adjustments of an initial lodestar calculation may sometimes be necessary to obtain a reasonable fee award, because the "results obtained" factor "is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* Where a plaintiff has succeeded on only some of his claims for relief, fees based on the initial lodestar calculation may represent an excessive amount. *See id.* at 436.

The "most critical factor" to take into account at this stage is the "degree of success obtained," because when unsuccessful claims and the successful ones share "a common core of facts or . . . related legal theories," division of hours, and thus fees, on a claim-by-claim basis may be impractical. *Hensley*, 461 U.S. at 436. The court is accorded discretion in determining how much to adjust, or whether to adjust at all, and "no precise rule or formula" exists for the court to follow. *Id.* at 436–37.

CVS argues the court should adjust the lodestar downward to account for Mr. King's lack of success on the majority of his claims. Indeed, Mr. King achieved only partial success. In his amended complaint, he sought to recover on ten counts against two different defendants. But Mr. King ultimately succeeded on only one of those claims against CVS. Notably, Mr. King did not prevail on any of his claims against Mr. Berguson.

While CVS argues this limited success weighs in favor of adjusting the lodestar downward, Mr. King argues that he voluntarily dismissed both claims regarding gender

discrimination after discovery and in response to CVS's motion for summary judgment, and "[a] review of the time entries for this period demonstrates that essentially no time was entered as to these two claims." (Doc. 266 at 26). He further argues that the evidence supporting his common law claims overlapped with the evidence supporting his successful ADEA claim, thereby making the time devoted to those claims so intertwined as to make them inseparable.

Mr. King also avers that he removed from his lodestar estimate all time devoted solely to his unsuccessful state law claims, resulting in a reduction of 112.95 hours of attorney time and 76.4 hours of paralegal time. This equates to a 5.2% reduction in attorney time and a 13.7% reduction in paralegal time that had accumulated at the time he filed the fee petition. However, this redlining included exclusions not just for unsuccessful claims, but also for work that Mr. King's counsel determined "excessive or otherwise unnecessary." (Doc. 266 at 7). So, according to those numbers, Mr. King avers that of the total hours for which he seeks compensation for his counsel, less than 7% of those hours were dedicated to the nine unsuccessful claims against CVS and all his claims against Mr. Berguson–a number CVS says is unrealistic.

CVS counters by arguing that it should not be required to compensate Mr. King for the time and effort his attorneys spent working on unsuccessful claims, and an accurate elimination of time spent on such work would result in more than a 7% reduction in hours. In response to Mr. King's suggestion that CVS cannot point to time entries designated to unsuccessful claims, CVS argues that Mr. King's attorneys did not keep adequately specific records to enable it to do so, something the Supreme Court has warned against. *See Hensley*, 461 U.S. at 437 (a fee petitioner "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."). Without such detailed data, CVS relies on the general reasoning that when a

plaintiff only proves one theory of liability against one defendant, while litigating ten theories against two defendants, a realistic reduction of hours would yield something greater than 7% of the attorneys' hours. The court agrees. *See Barker v. Niles Bolton Assocs., Inc.*, 316 F. App'x 933, 945 (11th Cir. 2009) (lodestar properly reduced by 75% where claims were interrelated and it was difficult to divide hours expended on claim-by-claim basis because of the manner in which counsel presented billing records).

Yet the court balances Mr. King's lack of success on the majority of his claims with the concept that "where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." *Hensley*, 461 U.S. at 435. A reduction to the lodestar "is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988). So, the court must use its discretion to determine whether Mr. King's relief is "limited" when compared to the scope of the entire litigation of this case.

While Mr. King only succeeded on one of his claims, it was no small victory. Proving age discrimination and willfulness is a significant feat, and CVS would be hard-pressed to show that Mr. King's failure to prove his other claims significantly diminished his recovery against CVS. Also, Mr. King persuasively argues that all his claims were so intertwined that the evidence introduced for the unsuccessful state law claims aided in achieving success on his federal claim against CVS.

Given Mr. King's success in proving that CVS willfully discriminated against him on the basis of his age, the court will not say that Mr. King's relief is "limited in comparison to the

scope of the litigation as a whole." *Norman*, 836 F.2d at 1302. The court is not convinced that Mr. King would have received a greater award of damages had he succeeded on all his claims in this case. Mr. King claimed $1,065,383.15 in damages (doc. 199 at 6), which is the exact amount of compensatory damages the jury awarded him (doc. 180). The jury also awarded him liquidated damages in the same amount because it found CVS's discrimination was willful. Nothing before the court suggests Mr. King's recovery was limited in any way, despite the fact that he did not prevail on each theory of liability.

Because Mr. King obtained a very high degree of success, which is the "most critical factor" for the court to consider at this stage in the calculation, the court does not find that a reduction to the lodestar is appropriate in this case. *See Hensley*, 461 U.S. at 436.

4. Fee Calculation

To arrive at the lodestar, the court multiplies the reasonable hourly rates by the reasonable number of hours expended. As shown below, this results in an award of attorney's fees for Mr. King in the total amount of $889,627.10

|  | Hourly Rate | Compensable Hours | Total Fee |
|---|---|---|---|
| Alicia Haynes | $475 | 867.26 | $411,948.50 |
| Kenneth Haynes | $420 | 283.82 | $119,204.40 |
| Charles Guerrier | $500 | 499.69 | $249,845.00 |
| Leirin Ragan | $190 | 265.2 | $50,388.00 |
| Gina Pearson | $315 | 22.23 | $7,002.45 |
| Paralegals | $125 | 409.91 | $51,238.75 |
|  |  | **Lodestar Total:** | **$889,627.10** |

### B.    Costs and expenses

Under Federal Rule of Civil Procedure 54, a prevailing party may recover the costs of litigation. *See* F.R.C.P. 54(d)(1). The ADEA enforcement provisions also provide for recovery of costs. *See* 29 U.S.C. § 626(b) ("The court in such an action shall . . . allow . . . a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Title 28 U.S.C. § 1920 specifies the categories of costs that are taxable under Rule 54(d)(1), allowing the court to tax as costs clerk fees; fees for printed or electronically recorded transcripts; fees for printing and witnesses; fees for costs of making copies; docket fees; and compensation of court-appointed experts, interpreters, and interpretation services. Aside from these statutory costs, Mr. King is generally permitted to recover certain litigation expenses as part of his award of attorneys' fees. *See NAACP v. City of Evergreen*, 812 F.2d 1332, 1337 (11th Cir. 1987); *Doucet v. Chilton Cnty. Bd. Of Educ.*, 65 F. Supp. 2d 1249, 1264 (M.D. Ala. 1999).

Mr. King requests reimbursement for costs and litigation expenses totaling $36,587.92. He seeks $17,199.95 in his "Bill of Costs" (doc. 187), and $19,387.97 in his "Time and Expense Report" (doc. 234-21). CVS objects to reimbursing Mr. King for specific entries within each document.

### 1.    CVS's Objections regarding the Bill of Costs

First, CVS objects to Mr. King's attempt to recover the purchase price of the transcript of Mr. King's testimony in the *Harris* case. According to the Bill of Costs, Mr. King purchased the transcript for $6,168.50. (Doc. 187 at 14). CVS argues that 28 U.S.C. § 1920(2) permits a party to recover costs for transcripts "necessarily obtained for use in a case," but not "merely . . . for convenience, to aid in thorough preparation, or for purposes of investigation only." (Doc. 247 at

19) (quoting *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000)).

Mr. King responds by arguing he is not seeking compensation for the transcript under §
1920, but rather as a "reasonable out-of-pocket expense incurred by the attorney as part of the
attorney's fee award." (Doc. 266 at 57). Because Mr. King acknowledges the transcript was not
necessarily obtained for use in the case, the court has removed this item from the amount
awarded under the Bill of Costs. However, the purchase price is compensable under the general
award of attorneys' fees because Mr. King used the transcript in the investigation and preparation
of his case, something CVS does not dispute.

Second, CVS objects to Mr. King's attempt to recover costs for photocopies listed in his
Bill of Costs. The bill contains a line item of $1,252.68 for "Fees for exemplification and copies
of papers necessarily obtained for use in the case," (doc. 187 at 1), a cost that falls within §
1920's categories of allowances, so long as they are "necessarily obtained for use in the case."
CVS objects that Mr. King has not shown that the photocopies were necessary, noting Mr.
King's only evidence is his counsel's affidavit attesting to their use. The court finds that the
proposed expenses for photocopies are not unreasonable for a case of this complexity and
duration, and requiring Plaintiff's counsel to more specifically annotate these entries would be
unreasonable.

Third, CVS objects to Mr. King's attempt to recover $1,527.58 for witness fees and
mileage payments (doc. 187 at 2). CVS argues Mr. King should not be reimbursed for those fees
to the extent any of the witnesses returned the funds or payment on them was stopped. In reply,
Mr. King assured CVS that if any witness or mileage fees included in their request are later
returned to Mr. King's counsel, counsel will promptly remit those funds to CVS. No evidence

suggests Mr. King is wrongfully seeking reimbursements for fees he has not paid, so the court will not exclude the fees from the amount awarded pursuant to the Bill of Costs.

2.    CVS's Objections to Litigation Expenses in the Time and Expense Report

CVS also objects to other expenses found in Mr. King's "Time and Expense Report." (Doc. 234-21). Specifically, CVS argues against reimbursing Mr. King for photocopies, postage, and PACER expenditures.

As explained above, Mr. King included charges for photocopies totaling $1,252.68 in his Bill of Costs, which he filed on June 15, 2015. (Doc. 187). Mr. Haynes' affidavit, produced in support of the costs, asserted that Mr. King's counsel had "generated 5,694 photocopies related to trial exhibits and other trial related documents such as proposed jury charges, proposed voir dire, etc." (Doc. 187 at 63). However, the Time and Expense Report also includes additional charges for 3,886 "Photocopies from 6/23/15 to 5/4/16." (Doc. 234-21). This number equals 68% of the total amount of copies generated in preparation for trial. Mr. King does not explain how these photocopies were necessary for the case; without such information, the court considers such a high number of photocopies unreasonable. The court assumes at least some of the copies were necessary for use in the case, but without more information, the high number suggests many of the copies were for counsel's own use or convenience. The court, therefore, only awards Mr. King half of the $854.92 he seeks for copies on his Time and Expense Report.

Finally, CVS objects to "certain expenses" that "would be considered overhead expenses, including items such as office supplies, and PACER services." (Doc. 247 at 20). CVS does not describe the exact entries that it labels "office supplies," but the court presumes CVS is referring to postage fees, and perhaps online research providers.

The Eleventh Circuit and district courts in this Circuit have generally allowed recovery of postage and legal research in awards for attorneys fees, and this court sees no reason to disallow them here. *See, e.g. Yule v. Jones*, 766 F. Supp. 2d 1333, 1344 (N.D. Ga. 2010) (citing *Cullens v. Ga. Dept. Of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). Nor does the court see any reason to treat PACER services any differently than legal research fees when they are incurred to litigate a case. After careful review of the Time and Expense Report, the court does not find Mr. King's PACER expenses to be unreasonable, nor are they distinguishable from other litigation costs such as postage and other online research services. Therefore, the court allows these expenses.

### 3.   Total Award of Costs and Expenses

After deducting $6,168.50–the amount of the *Harris* transcript–from the Bill of Costs, the court awards Mr. King $11,031.45 in statutory costs as allowed under §1920. After adding that same amount to the expenses that Mr. King is due, and deducting $427.46 for the excessive photocopy charges, the court awards Mr. King $25,129.01 in expenses. This brings the total award of statutory costs and expenses to $36,160.46, which will be added to the award of attorneys' fees as calculated above.

## II.   Conclusion

The court **GRANTS** Plaintiff's Motions in part and **AWARDS** $889,627.10 in attorneys' fees and $36,160.46 in costs and expenses, for a total of $925,787.56. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** this 12th day of December, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE